875 So.2d 949 (2004)
STATE of Louisiana
v.
Walter L. BAILEY.
No. 04-KA-85.
Court of Appeal of Louisiana, Fifth Circuit.
May 26, 2004.
*953 Paul D. Connick, Jr., District Attorney, Twenty-Fourth Judicial District, Parish of Jefferson, Terry M. Boudreaux, Anne Wallis, Appellate Counsel, Vincent A. Paciera, Jr., Trial Counsel, Assistant District Attorneys, Gretna, LA, for Plaintiff/Appellee.
Martin E. Regan, Jr., Kristen A. Moe, New Orleans, LA, for Defendant/Appellant.
Panel composed of Judges JAMES L. CANNELLA, MARION F. EDWARDS and CLARENCE E. McMANUS.
JAMES L. CANNELLA, Judge.
The Defendant, Walter Bailey, appeals his conviction of possession of cocaine, and his enhanced sentence as a fourth felony offender. We amend the enhanced sentence, affirm the conviction and enhanced sentence as amended and remand.
On May 15, 2002, the Defendant was charged with possession of cocaine, a violation of La. R.S. 40:967(c), and he pled not guilty. In August of 2002, a motion to suppress the evidence was denied after hearing. Following a jury trial on February 12, 2003, the Defendant was found guilty as charged.
The State filed a Habitual Offender Bill of Information on February 18, 2003, alleging the Defendant to be a fourth felony offender. The Defendant denied the allegations *954 and a hearing was held on April 1, 2003. At the conclusion, the trial judge found the Defendant to be a fourth felony offender and sentenced the Defendant to 20 years imprisonment at hard labor without benefit of parole, probation or suspension of sentence.
At approximately 1:30 a.m. on April 21, 2002, Gretna Police Officer Ryan Mekdessie was on patrol in a marked police unit in the area of Solon and Pratt Streets, a known drug area, when he observed a vehicle with a burned out right brake light and no license plate. He activated his lights and pulled the vehicle to the side of the road. As he approached the driver's side window, he noticed through the tinted glass that the license plate was in the back rear window. He then saw the driver, later identified as the Defendant, trying to conceal something between his legs. Officer Mekdessie asked the Defendant for his driver's license, registration and proof of insurance, at which time he saw an open can of beer. He then told the Defendant to exit the vehicle and advised him that he was under arrest for violation of the open container law.
Once the Defendant was out of the vehicle and under arrest, Officer Mekdessie searched him, which disclosed a cigarette pack in the right front pocket of the Defendant's pants. Inside the cigarette pack, the Officer found three off-white, rock-like substances that later tested positive for cocaine. A back-up officer arrived at the scene and placed the Defendant in a police vehicle for transport to jail.
On appeal, the Defendant asserts that his conviction should be reversed because the trial judge erred in accepting the prosecutor's race-neutral reason for peremptorily challenging an African-American juror, that the evidence was insufficient to convict, and the trial judge erred in excluding a certain affidavit. He further asserts that the sentence is excessive and requests a review for patent error. Pursuant to State v. Hearold, 603 So.2d 731, 734 (La.1992), we will address the sufficiency of the evidence issue first.

SUFFICIENCY OF THE EVIDENCE
The Defendant asserts that there was insufficient evidence to support his conviction for possession of cocaine.[1] He contends there were inconsistencies in the police officers' testimonies about whether the drugs were found before or after he was arrested. The Defendant relies heavily on the proffered affidavit of Laurie Scott or Bridget Mareus (Scott/Mareus affidavit) to challenge the credibility of the police officers.[2] The Defendant also states that the drugs were seized after a warrantless search of the vehicle and not incident to arrest. The Defendant does not assign as an error or challenge the trial court's denial of his motion to suppress the evidence. Thus, the only issue is whether the evidence produced by the State was sufficient to support the conviction.
To support a conviction for possession of cocaine, the State must prove that defendant knowingly or intentionally possessed the substance. La.R.S. 40:967(C). The standard for appellate review of the sufficiency of evidence is *955 "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560, 573 (1979); State v. Johnson, 01-1362, pp. 7-8 (La.App. 5th Cir.5/30/02), 820 So.2d 604, 608, writ denied, 02-2200 (La.3/14/03), 839 So.2d 32. When the trier-of-fact is confronted by conflicting testimony, the determination of that fact rests solely with that judge or jury, who may accept or reject, in whole or in part, the testimony of any witness. State v. Cazenave, 00-183, p. 14 (La.App. 5th Cir.10/31/00), 772 So.2d 854, 860, writ denied, 00-3297 (La.10/26/01), 799 So.2d 1151. It is not the function of the appellate court to assess the credibility of witnesses or to re-weigh the evidence. Id.; State v. Marcantel, 00-1629, p. 9 (La.4/3/02), 815 So.2d 50, 56.
At trial, Officer Mekdessie testified that he searched the Defendant after arresting him for violating the open container law. During the search, he found a cigarette pack containing the three off-white, rock-like substances in the right pocket of the Defendant's pants. Thomas Angelica, an expert in drug chemistry, tested two of the three rocks and testified that they were positive for cocaine. Nothing in the evidence refuted the facts asserted in the testimony. Although the Defendant claims that the Scott/Mareus affidavit contradicted Officer Mekdessie's testimony, it was held to be inadmissible evidence.
The Defendant also claims there were contradictions in Officer Bill Johnson's testimony. The Defendant claims that Officer Johnson contradicted himself by first stating that he had seen "property" on the back of the car and then stating that he did not know whether the evidence had been seized prior to his arrival. Officer Johnson stated that he arrived at the scene to back up Officer Mekdessie and that when he arrived on the scene, the Defendant was outside the car "on the back" of the vehicle. Officer Johnson handcuffed the Defendant and placed him in the rear seat of a police car. The Officer stated that he saw "property" on the back of the car but did not pay attention to it. He further stated that he did not seize any evidence and did not know if any evidence had been seized prior to his arrival.
There is no contradiction in these statements. The Defendant could have had other personal effects on him at the time the drugs were placed on the back of the car. Furthermore, whether the evidence had been seized prior to Officer Johnson's arrival is not relevant to whether the Defendant possessed the cocaine. Officer Mekdessie had previously testified that he retrieved the cigarette pack containing the cocaine from the Defendant's pants. Nothing in Officer Johnson's testimony contradicts Officer Mekdessie's testimony that the contraband was found in the Defendant's possession. Based on the evidence, we find that, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

BATSON CHALLENGE
The Defendant next argues that the trial judge erred in denying his Batson challenge. He asserts that the trial judge correctly found a pattern of discrimination in the State's peremptory challenges, but erroneously accepted the State's race-neutral reason for excusing juror Kacie Hockins (Hockins) because she lived on the street where the incident occurred. The Defendant asserts that such a reason is not sufficiently race-neutral, but rather is a pretext for racial discrimination.
*956 In Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), the U.S. Supreme Court held that an equal protection violation occurs if a party exercises a peremptory challenge to exclude a prospective juror on the basis of a person's race. See also, State v. Dunn, 01-1635, p. 7 (La.11/1/02), 831 So.2d 862, 869; La. C.Cr.P. art. 795 C. The Court in Batson set out a three-part analysis to determine whether a violation has occurred, which was also codified in C.Cr.P. art. 795 C. First, the defendant must establish a prima facie case of discrimination. Second, if the requisite showing is made, the burden shifts to the opposing party to offer racially-neutral explanations for the challenged members. Dunn, 01-1635 at pp. 7-8; 831 So.2d at 869. "The neutral explanation must be one which is clear, reasonably specific, legitimate, and related to the particular case at bar." Id. at p. 8, 831 So.2d at 869. Third, if the race-neutral explanation is tendered, the trial court must decide whether the challenger has proven purposeful discrimination. Id. A trial judge's determination in this regard rests on credibility evaluations. Thus, the trial judge's decision is entitled to great deference and the reviewing court should not reverse it unless the ruling is clearly erroneous. Batson, 476 U.S. at 98, n. 21, 106 S.Ct. at 1724; Dunn, 01-1635 at p. 8, 831 So.2d at 869. The proper inquiry in this third step is "whether the defendant's proof, when weighed against the prosecutor's proffered race-neutral reasons, is sufficient to persuade the trial court that such discriminatory intent is present." State v. Hobley, 98-2460, pp. 19-20 (La.12/5/99), 752 So.2d 771, 783, cert. denied, 531 U.S. 839, 121 S.Ct. 102, 148 L.Ed.2d 61 (2000). The focus is upon the intent of the prosecutor at the time the peremptory strike was used. Id. The trial court should consider all other statements or actions by the prosecutor during voir dire to determine discriminatory intent. Hobley, 98-2460 at p. 20, 752 So.2d at 783. Responses by the state qualify as race-neutral unless a discriminatory intent is inherent in the prosecutor's explanation. Hernandez v. New York, 500 U.S. 352, 360, 111 S.Ct. 1859, 1866, 114 L.Ed.2d 395 (1991); State v. Taylor, 99-1311, p. 5 (La.1/17/01), 781 So.2d 1205, 1212, cert. denied, 534 U.S. 844, 122 S.Ct. 106, 151 L.Ed.2d 64 (2001).
In this case, the State exercised five of its six peremptory challenges before a jury was selected. After the jury was selected, but prior to the jury being sworn, the Defendant made a Batson challenge.[3] The trial judge did not hear the Batson challenge until after the jury was sworn. At that time, the Defendant argued that four of the State's five peremptory challenges were exercised on prospective black jurors, Hockins, J.W. Nunnery (Nunnery), Leslie Sanders (Sanders), and Eric Anderson (Anderson), which resulted in an all-white jury. The trial judge noted that the Defendant's Batson challenge was properly made and asked the prosecutor to provide race-neutral reasons for challenging the jurors.[4]
The prosecutor stated that he excused Hockins because she lived on the street on which the crime occurred, Pratt *957 Street. He noted that she might have seen or heard something or might know two of the defense witnesses. The prosecutor stated that he excused Nunnery because he was very nervous. The prosecutor noted that Nunnery's hands were shaking, that he had problems speaking to the trial judge, and that he took a long time to answer the voir dire questions. The prosecutor explained that he challenged Sanders because her nephew had been charged with armed robbery. He excused Anderson because he had been a victim of burglary and was not satisfied with the way the police handled the investigation into the burglary. Thereafter, the trial court accepted the prosecutor's reasons as race-neutral and denied the Defendant's Batson challenge. The prosecutor's explanations in this case were racially neutral. Thus, the thrust of the Defendant's argument pertains to the third step, which is proof of purposeful discrimination.
At trial, the Defendant challenged the prosecutor's explanation for excusing Hockins by stating, "[the prosecutor] had the information where she lived. He could have asked her those questions and rehabilitated her or attempted to cause her for that reason." The Defendant did not dispute that Hockins lived on the street where the crime occurred.
In State v. Harris, 01-408 (La.6/21/02), 820 So.2d 471, the Louisiana Supreme Court was faced with a similar issue of whether the State's explanation for excluding a prospective juror because he lived near the crime was a pretext for race. The Supreme Court acknowledged that some courts have accepted such a justification as a race-neutral reason. However, in Harris, the Court determined that the prosecutor's explanation was a pretext for racial discrimination because the prosecutor first offered the explanation that the prospective juror was the only single black male on the panel with no children, but then stated he did not want the juror relating more to the defendant's side of the case. It was only after offering these explanations that the prosecutor added that the juror lived in Harvey, which was near the crime scene. The court determined that the state's explanation that its sole reason for excluding the juror based on his residency was unpersuasive and was simply a pretext to its true racial reason for excluding the juror.
This case is distinguishable from Harris. Here, the prosecutor did not mention race when providing his explanation for challenging Hockins and the juror's residency was not the prosecutor's after-thought or secondary explanation. In addition, the Defendant made no showing that the residence based challenge was a surrogate for race. The prosecutor explained his concern that because the juror lived on the same street as the arrest, she may have seen or heard something about the crime. None of the reasons indicate a pretext for racial discrimination. Further, the record reflects that the prosecutor provided reasons other than residence when explaining the challenges for the other prospective black jurors.
Considering that a trial judge's determination pertaining to purposeful discrimination rests largely on credibility evaluations and great deference is given to the trial judge in his determination, we find that the trial judge did not err in denying the Defendant's Batson challenge.

EXCLUSION OF THE SCOTT/MAREUS AFFIDAVIT
The Defendant claims that the trial court erred in finding the Scott/Mareus affidavit inadmissible. He argues that its maker was an unavailable witness because she previously asserted her Fifth Amendment right against self-incrimination. As such, the Defendant maintains that her *958 affidavit was admissible as an exception to the hearsay exclusion. The Defendant argues that the affidavit was admissible as a statement against interest by a witness who was unavailable for trial.
At the hearing on the motion to suppress prior to trial, the Defendant requested an instanter subpoena for Bridget Mareus (Mareus). She was brought to the hearing and sworn as a witness, at which time she refused to answer and invoked her Fifth Amendment right against self-incrimination to all questions. At trial, the Defendant sought to introduce the affidavit of Laurie Lynn Scott (Scott), allegedly Mareus, who he claimed was with him at the time of his arrest. He offered her affidavit rather than her live testimony on the basis that she would again assert her Fifth Amendment rights and was thus, an unavailable witness and there was no other way to get her statement into evidence. The Defendant also offered the testimony of attorney John Benz (Benz), the attorney that prepared the affidavit, regarding the contents of the document and the circumstances under which it was prepared. The State objected on the basis that Benz's testimony was hearsay, but the trial court allowed the testimony to be proffered.
Benz testified that a person named Laurie Lynn Scott came to his office with the Defendant and Steven Bailey (Bailey), the Defendant's father, on May 29, 2002. Benz stated that he prepared a notarial affidavit in which Scott swore she was with the Defendant on April 21, 2002 when they were stopped by the police and that the police searched the car and found drugs in a cigarette pack that she had hidden in the dash of the car. Scott stated that the police never asked her if the drugs were hers, but told her to leave the scene. She further stated that the three rocks of cocaine were hers and the Defendant did not know she had the drugs. Benz explained that he talked to Scott in private and that Scott signed the affidavit out of the others' presence. Benz further testified that could not confirm Scott's identity because she could not produce a driver's license.
After Benz's testimony, the trial judge ruled that Benz's testimony and the affidavit were inadmissible at trial. The trial judge stated that the affidavit was unreliable because there was a question as to who the person was, her motivation, whether she was coerced because she was accompanied by the Defendant, and the State would not have the opportunity to cross-examine her.
The admissibility of statements against interest is controlled by La.C.E. art. 804. Article 804 provides certain exceptions to the general rule against admissibility of hearsay statements when the declarant is unavailable. Article 804 provides in pertinent part:
A. Definition of unavailability. Except as otherwise provided by this Code, a declarant is "unavailable as a witness" when the declarant cannot or will not appear in court and testify to the substance of his statement made outside of court. This includes situations in which the declarant:
(1) Is exempted by ruling of the court on the ground of privilege from testifying concerning the subject matter of his statement;
....
B. Hearsay exceptions. The following are not excluded by the hearsay rule if the declarant is unavailable as a witness:
....
3) Statement against interest. A statement which was at the time of its making so far contrary to the declarant's pecuniary or proprietary interest, or so far tended to subject him to civil or *959 criminal liability, or to render invalid a claim by him against another, that a reasonable man in his position would not have made the statement unless he believed it to be true. A statement tending to expose the declarant to criminal liability and offered to exculpate the accused is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement. [Emphasis added]
The admission of statements against interest is based on necessity and trustworthiness. State v. Hammons, 597 So.2d 990, 996 (La.1992). A statement exposing the declarant to criminal liability and which is offered to exculpate the accused requires corroborating circumstances indicating its trustworthiness. La. C.E. art. 804(B)(3). The accused bears the burden of satisfying the corroboration requirement. Hammons, 597 So.2d at 996-997. Evidence independent of the statement which directly or indirectly tends to establish a matter asserted by the statement may satisfy the burden. Id. at 997. Examples of typical corroborating circumstances include, "statements against the declarant's interest to an unusual or devastating degree, or the declarant's repeating of consistent statements, or the fact that the declarant was not likely motivated to falsify for the benefit of the accused." Hammons, 597 So.2d at 997.
In Hammons, the defendant sought a new trial on the basis of newly discovered evidence. At the hearing, the defendant introduced the statements of a man who admitted organizing and participating in the robbery. The statements had been made by the man to an informant. The trial court denied the defendant's motion for a new trial after finding the evidence would not be admissible because of the lack of corroborating circumstances indicating the trustworthiness of the statements. The Court of Appeal affirmed the trial court's ruling, but the Supreme Court reversed. The court found that the declarant was unavailable because he asserted his privilege against testifying at the hearing on the motion for new trial and the statements were against the declarant's penal interest because of his admission to criminal acts which the declarant knew to be criminal and punishable by a significant length of imprisonment. The court then concluded that there was enough corroborating circumstances to indicate the trustworthiness of the statements and, hence, their admissibility at a new trial. The court relied on the following factors: (1) the declarant made the statements to an unknown informant, (2) the declarant repeated his statements concerning his participation in the robbery on several occasions and not in a single isolated incident, (3) some of the statements were recorded which provided irrefutable evidence that the statements were in fact made, (4) the declarant had not been charged with a crime and was not making the statement to put himself in a bargaining position with the police, and (5) there was nothing to suggest the statements were made under motivation to benefit the defendant. The court also noted external corroborating circumstances, that the declarant's identification of the actual gunman during the robbery bore a significant resemblance to the defendant and that the fingerprints on the tape casing handled by the robber did not match the defendant's prints.
In the present case, it is questionable whether the declarant was "unavailable." The affidavit purports to be the statement of Scott. Benz testified that Scott could not provide any identification and that he could not state that the person who claimed to be Scott was actually Scott. The Defendant represented to the trial judge that Scott was the same person who had testified at the pre-trial motion to *960 suppress hearing as Mareus and who had invoked her Fifth Amendment right against self-incrimination at that hearing. This connection was questioned by the State. The Defendant also indicated that the witness was not subpoenaed for trial and defense counsel had no idea where the witness was located.
In Hammons, the court found the declarant unavailable because he asserted his privilege against testifying at the hearing on the motion for new trial. However, the court noted that the defendant would have to show that the declarant was unavailable at the time of the new trial in order to introduce the statements. State v. Hammons, 597 So.2d at 997, footnote 6.
Even assuming Scott and Mareus are one and the same, the motion to suppress the evidence hearing at which Mareus testified was held on August 6, 2002. Trial was held February 12, 2003. The record indicates that Mareus was imprisoned at the time she invoked her right against self-incrimination at the motion to suppress hearing. Furthermore, the record indicates that Mareus asserted her privilege "at this time." Circumstances could have changed in six months and she may not have asserted the privilege at trial. There is no indication that Mareus intended to assert her privilege at trial. Thus, we find that the Defendant failed to show that Scott/Mareus was unavailable for trial.
Even if Scott/Mareus was unavailable for trial, the Defendant failed to carry his burden of proving corroborating circumstances, indicating the trustworthiness of the statement. The circumstances surrounding Scott's statements suggest that they were made under motivation to benefit the Defendant. Scott was brought to the attorney's office by the Defendant one month after the incident to make the statements. Additionally, there is nothing in the record to indicate that the statements were consistently repeated as opposed to an isolated declaration. Furthermore, the trustworthiness of the statements is highly questionable, considering the lack of identification provided by the declarant and the possibility that she used a fake name at the time she made the statements.
Accordingly, we find that the affidavit and the related testimony of Benz was inadmissible and the ruling of the trial judge properly excluded the proffered evidence.

EXCESSIVE SENTENCE
The Defendant asserts that his enhanced sentence is constitutionally excessive. He contends that his cocaine addiction and non-violent criminal history warranted a downward deviation from the mandatory minimum.
The Defendant was found to be a fourth felony offender and he was sentenced to the mandatory minimum of 20 years imprisonment at hard labor without the benefit of parole, probation or suspension of sentence.[5] La.R.S. 15:529.1(A)(1)(c)(i). The predicate convictions were for two drug offenses, possession of cocaine and attempted possession of cocaine, and felon in possession of a firearm. Prior to sentencing, the Defendant stated to the trial judge that he had a drug problem for which he had consistently requested help. He further argued that his criminal history was non-violent and that, because of his drug problem, a lesser sentence than the mandatory minimum was warranted, under State v. Dorthey, 623 So.2d 1276, 1280 (La.1993). The trial judge denied his request.
The Louisiana Constitution of 1974, art. I, § 20 provides, in pertinent *961 part, that "[n]o law shall subject any person to ... excessive ... punishment." Although a sentence is within statutory limits, it can be reviewed for constitutional excessiveness. State v. Smith, 01-2574, p. 6 (La.1/14/03), 839 So.2d 1, 4. A sentence is unconstitutionally excessive when it imposes punishment grossly disproportionate to the severity of the offense or constitutes nothing more than needless infliction of pain and suffering. Id. A trial judge has broad discretion when imposing a sentence and a reviewing court may not set a sentence aside absent a manifest abuse of discretion. Smith, 01-2574 at p. 6, 839 So.2d at 4. On appellate review, the relevant question is not whether another sentence might have been more appropriate, but whether the trial court abused its broad sentencing discretion. Smith, 01-2574, at pp. 6-7, 839 So.2d at 4.
It is presumed that a mandatory minimum sentence under the Habitual Offender Law is constitutional. State v. Johnson, 97-1906, p. 6 (La.3/4/98), 709 So.2d 672, 675; State v. Johnson, 03-620, p. 14 (La.App. 5th Cir.10/28/03), 860 So.2d 180, 189. However, if the trial judge finds that an enhanced punishment mandated by La.R.S. 15:529.1 makes no "measurable contribution to acceptable goals of punishment" or that the sentence amounts to nothing more than "the purposeful imposition of pain and suffering" and is "grossly out of proportion to the severity of the crime," the trial judge has the option and duty to reduce such sentence to one that would not be constitutionally excessive Dorthey, 623 So.2d at 1280; Johnson, 03-620 at p. 14, 860 So.2d at 189-190. Nevertheless, downward departures from a mandatory minimum sentence should occur only in rare situations. Johnson, 97-1906 at p. 9, 709 So.2d at 676.
A trial court may depart from the minimum sentence only if it finds clear and convincing evidence rebutting the presumption of constitutionality. Johnson, 97-1906 at p. 7, 709 So.2d at 676. In order to rebut the presumption, the defendant has the burden of showing that:
[h]e is exceptional, which in this context means that because of unusual circumstances this defendant is a victim of the legislature's failure to assign sentences that are meaningfully tailored to the culpability of the offender, the gravity of the offense, and the circumstances of the case.
Id., (quoting State v. Young, 94-1636 (La. App. 4th Cir.10/26/95), 663 So.2d 525, 528, writ denied, 95-3010 (La.3/22/96), 669 So.2d 1223). This evidence must be substantial. Johnson, 97-1906 at p. 7, 709 So.2d at 676. Thus, the "trial court may not depart from the legislatively mandated minimum simply because of some subjective impression or feeling about the defendant." Young, 94-1636 at p. 5, 663 So.2d at 528. See also: State v. Bell, 97-1134, p. 14 (La.App. 5th Cir.2/25/98), 709 So.2d 921, 927, writ denied, 98-0792 (La.9/16/98), 721 So.2d 477.
A defendant's "record of non-violent offenses cannot be the sole reason, or even the major reason, for declaring a mandatory minimum sentence excessive" because the Habitual Offender Law has already taken into account the question of a defendant's history of violent or non-violent offenses. State v. Johnson, 97-1906 at pp. 7-8, 709 So.2d at 676. The mere allegation of being a non-violent habitual offender and a drug addict is not sufficient to find the mandatory minimum sentence excessive. State v. Harbor, 01-1261, p. 7 (La.App. 5th Cir.4/10/02), 817 So.2d 223, 227, writ denied, 02-1489 (La.5/9/03), 843 So.2d 388.
In this case, the Defendant has not proven clearly and convincingly that a *962 downward deviation from the mandatory minimum sentence is warranted. Thus, we find that the sentence is not excessive.

ERROR PATENT
The record was reviewed for patent errors, according to La.C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La.1975); State v. Perrilloux, 99-1314 (La.App. 5th Cir.5/17/00), 762 So.2d 198. We find two patent errors requiring action by this Court.[6]
First, the trial judge imposed an illegal sentence detrimental to the Defendant when he improperly imposed the Defendant's enhanced sentence without the benefit of parole. Neither La.R.S. 15:529.1(A)(1)(c)(i), nor La.R.S. 40:967(C) provide that this enhanced sentence must be served without benefit of parole. Therefore, we amend the sentence to allow for the possibility of parole in accordance with the applicable sentencing provisions. See, State v. Chirlow, 99-142, p. 10 (La. App. 5th Cir.6/1/99), 738 So.2d 679, 684-685, writ denied, 99-1996 (La.1/7/00), 752 So.2d 176.
Second, the commitment incorrectly states that the trial judge vacated the Defendant's original sentence, when the transcript shows that the trial judge did not impose an original sentence.[7] Where there is a discrepancy between the commitment and the transcript, the transcript prevails. State v. Lynch, 441 So.2d 732, 734 (La.1983). Consequently, we will order the commitment to be amended to correct this discrepancy.
Accordingly, we hereby affirm the Defendant's conviction and amend his enhanced sentence to allow for the possibility of parole in accordance with the applicable sentencing provisions. We remand the case for the trial court to correct the commitment in accordance with this opinion.
SENTENCE AMENDED, CONVICTION AND SENTENCE AFFIRMED AS AMENDED, REMANDED.
NOTES
[1] It is noted that the Defendant did not file a motion for post-verdict judgment of acquittal pursuant to La.C.Cr.P. art. 821. Although he did file a motion for new trial, procedurally there is a distinction between the two motions. However, such failure does not preclude appellate review of the sufficiency of the evidence. State v. Washington, 421 So.2d 887, 889 (La.1982); State v. Harrell, 01-841 (La.App. 5th Cir.2/26/02), 811 So.2d 1015, 1017, footnote 3.
[2] The admissibility of the proffered affidavit is addressed infra in assignment of error three.
[3] A Batson challenge is timely if it is made prior to the jury being empaneled and sworn. La.C.Cr.P. art. 795(B)(1); State v. Duncan, 99-2615, p. 17 (La.10/16/01), 802 So.2d 533, 546-547, cert. denied, 536 U.S. 907, 122 S.Ct. 2362, 153 L.Ed.2d 183 (2002).
[4] A trial judge's demand that a prosecutor justify his use of peremptory strikes is tantamount to a finding that the defense has presented enough evidence to meet the initial burden in step one, or that a prima facie case of discrimination has been made. State v. Green, 94-0887, p. 25 (La.5/22/95), 655 So.2d 272, 288.
[5] No original sentence was imposed on the underlying possession of cocaine conviction.
[6] There are errors in the habitual offender bill of information, but they are typographical and/or are not prejudicial to the Defendant, i.e. incorrect date that the bill was filed and incorrect date of conviction of one of the predicate felonies. Thus, we need not address them in the opinion.
[7] The trial judge is not mandated to sentence the defendant on the original offense prior to enhancing the sentence. See: State v. Bell, 00-1084 (La.App. 5th Cir.2/28/01), 781 So.2d 843, 845, footnote 1, writ denied, 01-776 (La.4/26/02), 813 So.2d 1098.