901 So.2d 470 (2005)
STATE of Louisiana
v.
Robert R. YRLE.
No. 04-KA-900.
Court of Appeal of Louisiana, Fifth Circuit.
March 29, 2005.
*471 Paul D. Connick, Jr., District Attorney, 24th Judicial District, Parish of Jefferson, State of Louisiana, Terry M. Boudreaux, Assistant District Attorney, Gretna, Louisiana, for Plaintiff/Appellee.
Holli Herrle-Castillo, Louisiana Appellate Project, Marrero, Louisiana, for Defendant/Appellant.
Panel composed of Judges EDWARD A. DUFRESNE, JR., JAMES L. CANNELLA, and THOMAS F. DALEY.
JAMES L. CANNELLA, Judge.
The Defendant, Robert Yrle, appeals from his conviction of theft of goods valued between $100 and $500. We affirm.
On June 17, 2003, the Jefferson Parish District Attorney filed a bill of information charging the Defendant with a violation of La.R.S. 14:67.10, theft of goods valued at more than $100 and less than $500, from Albertson's supermarket. The Defendant was arraigned on July 21, 2003 and pled not guilty. The State amended the bill of information on September 30, 2003, adding as count two, theft of goods from Winn-Dixie, another supermarket, valued at more than $100 and less than $500.[1]
On February 9, 2004, the State filed a Notice of Intent to Use Evidence of Other Crimes. On February 18, 2004, the trial court ruled that the State would be allowed to introduce the other crimes evidence at trial.[2] The Defendant filed several pre-trial motions, including motions to suppress the evidence and confession. Those motions were heard and denied on February 18, 2004.
The Defendant was tried on Count 2 by a six-member jury on April 8, 2004.[3] The jury returned a verdict of guilty as charged. On May 13, 2004, the trial judge sentenced the Defendant to two years imprisonment at hard labor.[4] The Defendant timely appealed his conviction.
Scott Shelly (Shelly), a manager of the Winn-Dixie supermarket at 211 Veterans *472 Boulevard in Metairie worked the 6:00 a.m. to 4:00 p.m. shift on July 15, 2003. Shortly after her shift started, a store employee called his attention to a man who was walking strangely, as if both of his legs were broken. When Shelly investigated, he saw the Defendant walking quickly and awkwardly toward the exit. He could not bend his knees. Shelly hurriedly followed the Defendant, who set off the loss prevention alarm as he went through the exit. He did not stop to pay for any merchandise and the alarm indicated to Shelly that the Defendant had unpaid merchandise on him. Outside, Shelly noticed a car parked in the fire lane in front of the store with a man and woman inside. When Shelly yelled at the Defendant to stop, the car immediately drove away. The Defendant looked back, saw Shelly, and began to run. Shelly followed, yelling at him to stop. As the Defendant ran, Shelly heard a loud noise as he ran that sounded like glass clanking together. Because the Defendant was unable to bend his knees, he eventually fell to the ground. At that point, Shelly heard the sound of breaking glass and he could see liquid running down the Defendant's legs. After falling, the Defendant got up and started to run again down the street. A security guard from the store had followed the men. He also ran after the Defendant. Shelly and the guard tackled the Defendant. They held him face down on the ground. Shelly testified that the Defendant had in his hand a pocket knife with the blade out.
Shelly called the police from a telephone at a nearby apartment complex. He helped restrain the Defendant until a policeman arrived. The security guard showed Shelly that the Defendant was wearing two pairs of pants. The inner pair had elastic at the ankles. The police officer that arrived on the scene showed Shelly broken bottles of alcohol inside the Defendant's pants. Shelly identified the Defendant in court as the perpetrator.
Deputy Greg Duncan of the Jefferson Parish Sheriff's Office testified that when he arrived at the Winn-Dixie, bystanders directed him to a nearby apartment complex where Shelly and the security guard were holding the Defendant. Deputy Duncan testified that several bottles of alcohol were found inside the Defendant's pants. Six bottles had broken and cut the Defendant's ankles. Three bottles were intact. Deputy Duncan determined the number of broken bottles by counting the bottle necks. Shelly identified the bottles to the deputy as Winn-Dixie merchandise. Deputy Duncan confirmed that the Defendant had two pair of pants on and that the inner pair was sweatpants bound at the ankles.
Deputy Duncan gave Shelly a list of the recovered merchandise and asked him for prices. Shelly checked the store shelves for current prices and gave the information to him. The merchandise totaled $181.09.
On appeal, the Defendant asserts that the trial judge erred in granting the State's motion to admit other crimes evidence and that the evidence was insufficient to sustain the conviction.

SUFFICIENCY OF THE EVIDENCE
Pursuant to State v. Hearold, 603 So.2d 731, 734 (La.1992), we will address the sufficiency of the evidence issue first. See also, State v. Bailey, 04-85, p. 3 (La.App. 5th Cir.5/26/04), 875 So.2d 949, 954, writ denied, 04-1605 (La.11/15/04), 887 So.2d 476.
*473 The standard for appellate review of the sufficiency of evidence is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560, 573 (1979); Bailey, 04-85 at 4, 875 So.2d at 954-955. When the trier of fact is confronted by conflicting testimony, the determination of that fact rests solely with that judge or jury, who may accept or reject, in whole or in part, the testimony of any witness. Bailey, 04-85 at 4, 875 So.2d at 955. It is not the function of the appellate court to assess the credibility of witnesses or to re-weigh the evidence. State v. Marcantel, 00-1629, p. 9 (La.4/3/02), 815 So.2d 50, 56; Bailey, 04-85 at 5, 875 So.2d at 955.
In cases involving circumstantial evidence, La.R.S. 15:438 mandates that "assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence." In State v. Mitchell, 99-3342, p. 7 (La.10/17/00), 772 So.2d 78, 83, the Louisiana Supreme Court stated:
On appeal, the reviewing court "does not determine whether another possible hypothesis suggested by a the Defendant could afford an exculpatory explanation of the events."... Rather, the court must evaluate the evidence in a light most favorable to the state and determine whether the possible alternative hypothesis is sufficiently reasonable that a rational juror could not have found proof of guilt beyond a reasonable doubt....
(Citations omitted; emphasis in the original)
See also, State v. Ingram, 04-551, pp. 5-6 (La.App. 5th Cir.10/26/04), 888 So.2d 923, 925-926.
To support a conviction for theft of goods valued between $100 and $500, the State is required to prove that (1) the defendant misappropriated or took, (2) a thing of value, (3) which belonged to another, and (4) he had the intent to deprive the owner permanently of that which was misappropriated or taken. La.R.S. 14:67.10; State v. Johnson, 02-254, p. 4 (La.App. 5th Cir.6/26/02), 822 So.2d 840, 843. Additionally, the State is required to prove the value of the stolen property because the determination of the severity of the offense and the degree of punishment upon conviction depend upon the value of the stolen goods.
Here, the Defendant contends that the State proved the theft of only three bottles of liquor with a total value of $58.84, and that he was, at most, guilty of a misdemeanor theft. Defendant also argues that the broken bottles were never identified as Winn-Dixie merchandise, thus raising a doubt as to whether he took them from that store.
Shelly first saw the Defendant while he was still inside the store, walking as if he could not bend his knees. When Shelly approached him, the Defendant began walking quickly toward the exit and set off the loss prevention alarm when he exited the store. As he followed the Defendant out of the store, Shelly could hear a loud noise, like glass banging together. When the Defendant fell to the ground outside the store, Shelly heard the sound of breaking glass, and saw liquid running down the Defendant's leg. From those facts, the trier of fact could reasonably infer that the Defendant left the store with unpaid merchandise in his pants.
When Deputy Duncan arrived at the scene, he found that the Defendant had broken bottles inside his pants, and that the broken glass had cut his legs. Both Shelly and Deputy Duncan testified *474 that three bottles of liquor were recovered intact. Shelly identified those three as store merchandise. By counting bottlenecks, Deputy Duncan was able to determine there were six broken bottles. Deputy Duncan was able to tell from the remains of the broken bottles what brands of liquor they had contained. He made a list of the broken and intact bottles and gave the information to Shelly. Shelly checked the prices of the merchandise. At trial, Shelly identified the property receipt that he provided to Deputy Duncan. The receipt lists four 750 milliliter (ml.) bottles of Absolut Vodka, totaling $71.96, one 750 ml. bottle of Jack Daniels Whiskey (Black Label) at $17.69, and four 750 ml. bottles of Jack Daniels (Red Label), totaling $91.44. Those total $181.09. Thus, the State proved the value of the stolen goods.
There is no direct evidence to link the broken bottles to Winn-Dixie. Deputy Duncan did not have personal knowledge of where the bottles came from and Shelly testified he did not check all of the bottles (i.e., the broken ones) to determine whether they belonged to Winn-Dixie. However, the store had just opened for the day. Furthermore, Shelly testified that he was able to tell some bottles were missing from the store shelves by counting the remaining bottles. Three to four bottles of Absolut Vodka bottles were missing from the shelves. Under these facts, it is reasonable to infer that the Defendant obtained all of the bottles from Winn-Dixie, rather than to assume he carried some of the bottles into the store with him in his pants and then concealed three more the same way. Viewing the evidence in the light most favorable to the prosecution, we find that the State met its burden of proving that the Defendant committed the offense.

OTHER CRIMES EVIDENCE
The Defendant next contends that the trial judge erred in allowing evidence of a theft at another supermarket, because it constituted inadmissible "other crimes" evidence. According to the record, the Defendant failed to make a contemporaneous objection to the introduction of this evidence in trial. Thus, the Defendant is precluded from raising the issue on appeal. La.C.Cr.P. art. 841; State v. Noil, 01-521 (La.12/26/01), 807 So.2d 295, 313, writ denied, 02-0276 (La.10/25/02), 827 So.2d 1177; State v. Styles, 96-897 (La.App. 5th Cir.3/25/97), 692 So.2d 1222, 1227-1228, writ denied, 97-1069 (La.10/13/97), 703 So.2d 609.[5]
Accordingly, the Defendant's conviction and sentence are hereby affirmed.
AFFIRMED.
NOTES
[1] There is no evidence in the record that the Defendant was arraigned on the amended bill of information. However, any objection to the failure to arraign was waived when the Defendant went to trial without objection. La.C.Cr.P. Art. 555.
[2] The trial judge noted that he had heard arguments on the matter in chambers.
[3] The State nolle prosequied Count 1 of the bill of information on May 13, 2004.
[4] On the same day, the State filed a habitual offender bill of information, alleging the Defendant to be a fourth felony offender. The Defendant was advised of the allegations in the bill of information, and he denied them. Following a hearing on December 8, 2004, the trial judge found the Defendant to be a habitual offender. That finding is not a part of this appeal.
[5] The record was reviewed for patent errors in accordance with La.C.Cr.P. art. 920. See: State v. Oliveaux, 312 So.2d 337 (La.1975); Bailey, 04-85 at 17, 875 So.2d at 962. The review reveals no errors in this case.