MARC E. JOHNSON, Judge.
 

 | {¿Defendant, Michael Coe, appeals from his conviction for second degree murder. For the reasons that follow, we affirm.
 

 On May 1, 2008, a Jefferson Parish Grand Jury indicted defendant and co-defendant, Cheri Hayden, for second degree murder in violation of La. R.S. 14:30.1. Defendant pled not guilty and filed several pre-trial motions, including a motion to sever the defendants for trial that was denied. He proceeded to trial on July 13, 2009. After a three-day trial, a 12-person jury unanimously found defendant guilty as charged. The trial court sentenced defendant to life imprisonment without bene
 
 *296
 
 fit of parole, probation, or suspension of sentence. Defendant timely appeals.
 
 [1]
 

 FACTS
 

 Around 1:30 p.m. on February 23, 2008, Tabitha Chiasson heard someone yelling for help in the parking lot of Laborie’s Supermarket in Marrero. She ran towards the yelling and observed a male leaning out of a truck trying to steal a woman’s purse. The woman, who was later identified as Patricia Landry, was still | sholding onto the purse’s strap, while the male was tugging on the purse. Ms. Chi-asson explained that it appeared the truck was being used as leverage, with the driver starting and stopping it. Fearing that the victim would be run over by the truck, Ms. Chiasson tried to pull Ms. Landry back while trying to push the male away and yelled for them to let go. The driver then cut the wheel causing the victim to fall. The victim was dragged underneath the truck where the truck’s back tire rolled over her back.
 

 Ms. Chiasson remained with the victim and told her to “hang on.” Nurses on the scene tried to revive the victim until an ambulance arrived, but the victim died. An autopsy revealed the 63-year-old victim died as a result of multiple blunt force injuries including rib fractures, collapsed lungs and a spinal fracture.
 

 When the police arrived, Ms. Chiasson was able to describe two of the truck’s occupants. She stated that the male holding the purse had a big mustache, brown hair, was dirty, and smelled bad. She described the driver as a dirty-looking, pasty-white, skinny female with long, strawberry-blonde hair, and green eyes. Ms. Chiasson believed there was someone else in the back of the truck but was unable to see the person because of the tinted windows. She further noted there was no license plate on the bumper.
 

 The truck, described as a red Dodge Ram, quickly left the parking lot and passed near a seafood stand in the parking lot of Laborie’s. Bonnie Gras, who owned and worked at the seafood stand, had heard a lady screaming in the parking lot and saw the truck leaving. She explained that she initially believed the truck had gone over a speed bump, but later learned what had happened. Ms. Gras noted the truck pulled out of the parking lot so quickly, its wheels screeched as it turned the corner. She stated the truck’s passenger window was down and she was able to see the person in the passenger seat. Ms. Gras gave a description of the passenger Lto the police and indicated she thought she recognized him as having accompanied one of her customers, Roy Williams, to her seafood stand two or three times in the past. She further described a female occupant of the truck as having long dirty blonde hair.
 

 Shortly after the truck left the Laborie’s parking lot, a 9-1-1 call was made by Connie Dutreil in connection with an automobile accident she had with a red Dodge Ram truck approximately four or five miles from Laborie’s. Ms. Dutreil stated the truck, driven by a female with two-tone blonde and brown hair, turned in front of her and the two vehicles slid into each other. She explained the truck took off and she followed it. She was able to give the 9-1-1 operator the temporary license plate number of the truck, which was located in its back window. As Ms. Dutreil followed the truck, she observed a black purse being thrown from the passenger side of the truck. Ms. Dutreil also
 
 *297
 
 observed the driver and passenger switch seats. Thereafter, the male driver put the truck in reverse, backed into Ms. Dutreil totaling her car, and then left. Ms. Du-treil subsequently looked inside the discarded purse for identification and found the victim’s name on several items in the purse.
 

 Based on Ms. Gras’ indication that she had seen the truck’s passenger with her customer, Roy Williams, the police interviewed Mr. Williams. Mr. Williams provided the police with three names, including defendant’s name. Three photographic lineups were subsequently prepared and shown to Ms. Gras. She identified defendant from one of the lineups as the passenger of the truck. Ms. Chi-asson, who helped the victim at the time of the purse snatching, also identified defendant from a photographic lineup as the passenger of the truck. Ms. Chias-son further identified co-defendant, Hayden, from a photographic lineup as the female driver of the truck.
 

 Is An arrest wairant was obtained for defendant and he was arrested the next day at his sister’s residence. The residence was searched but nothing of eviden-tiary value was found. Defendant was subsequently advised of his rights and interviewed. During his interview, defendant indicated he was with Hayden throughout the day and evening on the day of the murder. He further denied any involvement or knowledge of the murder. According to Lieutenant Don Meunier, when confronted with Ms. Gras’ positive identification of him, defendant appeared upset and declined to answer additional questions. Defendant ultimately declined to give a taped statement.
 

 A third suspect, Matthew Vinet, was later identified based on the receipt of an anonymous call made to the Detective Bureau.
 
 [2]
 
 Vinet was the registered owner of the red Dodge Ram truck. The truck was subsequently located in the possession of a third party, who was cleaning the truck after Vinet had brought the truck to him. A search of the red truck revealed a black piece of plastic from the rear bumper that fit like a puzzle to a piece of plastic recovered from the car Ms. Dutreil was driving at the time of her automobile accident.
 

 According to Vinet, he had picked up defendant and Hayden in his truck on the day of the murder after their car broke down. Vinet explained Hayden took over driving because he and defendant were getting loaded smoking crack. He stated he got into the backseat behind the passenger’s seat and defendant was in the passenger’s seat. Vinet stated that defendant wanted to get more crack, and they went to Laborie’s “[t]o make the deal.” He said that after defendant exited the truck, he heard screaming and saw defendant trying to grab someone’s purse. He said that he saw the woman running after defendant, but defendant got back into the truck with her purse. Vinet said they left the parking lot and wrecked with the | Rsame car twice, but at different locations. He also testified that defendant threw the purse out of the window. He further stated defendant and Hayden swapped seats, at which time defendant put the car in reverse and ran into the car that was behind them.
 

 Defendant did not testify at trial but Hayden did. She testified that on the day of the murder, she picked defendant up at approximately 7:30 a.m. and brought him to “Jill’s” house. She stated she left Jill’s
 
 *298
 
 house around 12:30 or 12:45 p.m. to get ready for her granddaughter’s birthday party, while defendant stayed at Jill’s house. Hayden said she picked up defendant around 2:40 p.m. in her own green car and they went to her granddaughter’s birthday party. According to Hayden’s daughter, defendant arrived at the party around 3:00 p.m. Hayden stated defendant left the party in her ear about thirty or forty-five minutes after they arrived, and did not return until about 8:30 p.m. Hayden denied any involvement in the incident at Laborie’s and denied being in a red truck on the day of the incident. She admitted she was dating defendant at the time.
 

 Defendant appeals assigning three assignments of error.
 

 SUFFICIENCY OF THE EVIDENCE
 

 In one of defendant’s three assignments of error, he argues the evidence is insufficient to support his conviction for second degree murder because the State failed to prove his identity as the perpetrator.
 

 The constitutional standard for testing the sufficiency of the evidence, as enunciated in
 
 Jackson v. Virginia,
 
 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979), is whether after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Both the direct and circumstantial evidence must be sufficient to support the conclusion that the 17defendant is guilty beyond a reasonable doubt.
 
 State v. Harrell,
 
 01-841, p. 7 (La.App. 5 Cir. 2/26/02), 811 So.2d 1015, 1019.
 

 Second degree murder is defined as the killing of a human being when the offender 1) has specific intent to kill or to inflict great bodily harm; or 2) is engaged in the perpetration or attempted perpetration of one of several enumerated felonies, even though he has no intent to kill or to inflict great bodily harm. La.R.S. 14:30.1;
 
 State v. Lewis,
 
 05-170, p. 8 (La.App. 5 Cir. 11/29/05), 917 So.2d 583, 589-90,
 
 unit denied,
 
 06-757 (La.12/15/06), 944 So.2d 1277. In addition to proving the statutory elements of the charged offense at trial, the State is required to prove defendant’s identity as the perpetrator.
 
 State v. Draughn,
 
 05-1825, p. 8 (La.1/17/07), 950 So.2d 583, 593,
 
 cert. denied,
 
 552 U.S. 1012, 128 S.Ct. 537, 169 L.Ed.2d 377 (2007);
 
 State v. Ingram,
 
 04-551, p. 6 (La.App. 5 Cir. 10/26/04), 888 So.2d 923, 926. Where the key issue is identification, the State is required to negate any reasonable probability of misidentification.
 
 Draughn, supra.
 

 Defendant does not argue that the State failed to establish any of the essential statutory elements of his conviction and, in fact, he concedes that the victim died during the perpetration of a robbery. Rather, defendant solely contends the State failed to prove beyond a reasonable doubt his identity as the offender.
 

 We note that positive identification by one witness is sufficient to support a conviction.
 
 State v. Harris,
 
 07-124, p. 9 (La.App. 5 Cir. 9/25/07), 968 So.2d 187, 193. The State presented positive identifications of defendant by three witnesses: Ms. Chiasson, Ms. Gras, and Vinet.
 

 Ms. Chiasson stated that the truck’s passenger side window was down when she was attempting to help the victim. She was able to give a detailed description of defendant and the driver and was also able to describe the interior of the truck. | ^Additionally, she was close enough to defendant that she was able to testify about how defendant and the interior of the truck smelled.
 

 
 *299
 
 Ms. Chiasson positively identified defendant as the passenger of the truck and as the person who took the victim’s purse after viewing a photographic lineup several hours after the incident. While she immediately identified Hayden as the driver, Ms. Chiasson took a little longer to make the identification of defendant. She explained she took a little longer because she had to picture him with “the trucker hat” he had on at the time of the incident and she wanted to be sure of her identification. She further identified defendant in court as the passenger of the truck.
 

 Ms. Gras also testified she was able to see defendant through the truck’s passenger’s side window, which was down, when the truck passed her seafood stand. Ms. Gras believed she recognized defendant as someone who had previously come to her seafood stand on two or three occasions with one of her customers, Mr. Williams. The police prepared three photographic lineups, with each of the three persons identified by Mr. Williams as people with whom he associated. All three lineups were shown to Ms. Gras several hours after the incident. Ms. Gras only made one identification, in which she positively identified defendant as the passenger of the truck. At trial, Ms. Gras again identified defendant as the person she saw in the truck’s passenger seat. She testified she was absolutely sure of her identification. She explained that the incident happened during the daytime, at a time when it was not raining, and that nothing blocked her view.
 

 Vinet also positively identified defendant in a photographic lineup. He testified that he was in the backseat of his truck with Hayden driving and defendant as the passenger. He stated that in the Laborie’s parking lot he heard screaming, |9saw defendant grab a woman’s purse, saw the woman run after defendant, and observed defendant get back into the truck with the purse. He also testified that defendant threw the purse out of the window, that defendant and Hayden swapped seats, and that defendant put the truck in reverse and ran into the car that was behind them. Vinet testified that he had no deals with the State in exchange for his testimony.
 

 Although Ms. Dutreil was not able to identify the male in the truck, her testimony corroborated that of the other identification witnesses presented by the State. For instance, she testified that the passenger of the red truck was a male and that he threw a purse from the window. She stated that the driver and passenger switched seats and then the male driver put the truck in reverse and backed into her. Her car was linked to the red truck by an expert who testified that plastic from her car that was found on the truck.
 

 Defendant attacks the credibility of each of the State’s identification witnesses. He first argues Ms. Chiasson admitted that a lot was happening at the time of the incident and that the police showed up at her home after 1:00 a.m. when she was distraught, exhausted, and after she may have taken Tylenol P.M. He further points out that she took a long time to identify him. Defendant concludes that there was a reasonable probability that she made an inaccurate identification. He next asserts there was a reasonable probability that Ms. Gras misidentified him as the perpetrator based upon the short length of time she saw the man in the truck and the fact that she was only vaguely familiar with defendant and had not seen him recently. Defendant also maintains that Vinet’s testimony and identification are suspect because he was drunk at the time in question. Defendant also contends that it is unclear whether Vinet was promised a deal with the State.
 

 | mThe credibility of witnesses is within the sound discretion of the trier of fact.
 
 *300
 

 State v. Jones,
 
 08-20, p. 7 (La.App. 5 Cir. 4/15/08), 985 So.2d 234, 240. It is not the function of the appellate court to second-guess the credibility of witnesses as detei'-mined by the trier of fact or to reweigh the evidence absent impingement on the fundamental due process of law.
 
 Id.
 

 The jury obviously believed the testimony of the State’s witnesses who positively identified defendant as the passenger of the truck and as the person who took the victim’s purse. Through cross-examination, the jury was well aware of the credibility issues which defendant argues. The record shows that details contained within the testimonies were corroborated by the testimony of other witnesses. Although defendant suggests misidentifícation, viewing the evidence in a light most favorable to the State, we find the evidence sufficiently negates all reasonable probability of misidentifícation and that the State sufficiently proved defendant’s identity as the perpetrator of the offense.
 

 MOTION TO SEVER THE PARTIES
 

 Defendant also challenges the trial court’s denial of the motion to sever the defendants
 
 for
 
 trial on the basis he was confounded in presenting his defense. He maintains Hayden’s alibi testimony, that she was not with defendant at the time of the murder, contradicted his verbal statement to the police that he was with Hayden all day. Although defendant admits the defenses were not classically antagonistic, defendant claims he was prejudiced in putting on his defense because Hayden’s statement suggested he lied about where he was at the time of the murder. Defendant further contends the conflicting information was not previously provided to the defense during discovery.
 

 The State contends that any claim regarding severance has been waived because defendant failed to allege specific grounds for the severance in his pre-trial |„motion and asserts different grounds for the severance on appeal than were raised in his pre-trial motion. Specifically, the State claims the pre-trial oral motion to sever was made as a precautionary measure with no specific grounds, while on appeal defendant argues that the defendants should have been severed based on the alleged inconsistency of Hayden and defendant’s statements. The State acknowledges defendant reasserted his motion to sever by requesting a mistrial based on the alleged inconsistency of the statements, but maintains the objection was untimely.
 

 Alternatively, the State contends that defendant’s assignment of error has no merit. The State claims that the essence of each defendant’s defense of non-involvement in the criminal activity was consistent with no apparent conflict between the defenses. The State asserts that defendant failed to show that the introduction of Hayden’s defense before the jury created a prejudicial atmosphere and, thus, defendant failed to show he was confounded in presenting his defense. Nonetheless, the State contends that any error in failing to sever the defendants was harmless given the overwhelming evidence presented against defendant, which included three positive identifications.
 

 The record shows Hayden and defendant made a joint pre-trial oral motion to sever defendants for trial. Defendants specifically argued:
 

 ... we have statements
 
 from
 
 each defendant, they don’t contradict each other. They’re both statements that are made to the police. They’re not in the classic sense saying that the other person did this and the other person did that. The statements contained herein are statements concerning alibis. They’re not exculpatory. I’m just once again doing this to — in an abundance of
 
 *301
 
 caution in case this was not raised and an appellate court would have this back for an evidentiary hearing in that I failed to do this.
 

 The State opposed the severance and the trial court tacitly denied the motion.
 

 |,20n the second day of trial, counsel for Hayden moved for a mistrial on the basis the defendants should have been severed for purposes of trial because the trial testimony had just revealed Hayden and defendant’s statements were contradictory. Counsel for Hayden noted that during the testimony of two officers, it was revealed there were conversations involving defendant that were not taped and not provided to the defense. Counsel further noted that Lt. Meunier had just testified that defendant and Hayden’s statements were contradictory. Counsel stated that when he made his pre-trial motion to sever, he was not aware the statements were contradictory. Counsel for defendant joined in the motion for mistrial.
 

 The trial court denied the motion for a mistrial stating that the officer’s testimony was that Hayden and defendant’s stories did not match, and not that their statements were antagonistic. The State subsequently noted that defendant’s verbal statement was contained in Lt. Meunier’s supplemental report, which was provided to the defense.
 

 Although the alleged contradictory statements of Hayden and defendant were not raised as the grounds for the pre-trial motion to sever, the contradictory statements were raised as a ground for defendants’ motion for mistrial on the issue of severance that was made during trial. Accordingly, contrary to the State’s assertion, we find this issue is properly before us on appeal.
 
 See State v. McGraw,
 
 366 So.2d 1278, 1285 (La.1978).
 

 La.C.Cr.P. art. 704 provides the following regarding severance:
 

 Jointly indicted defendants shall be tried jointly unless:
 

 (1) The state elects to try them separately; or
 

 (2) The court, on motion of the defendant, and after contradictory hearing with the district attorney, is satisfied that justice requires a severance.
 

 | UiWhether justice requires a severance must be determined by the facts of each case.
 
 State v. Prudholm,
 
 446 So.2d 729, 741 (La.1984);
 
 State v. Condley,
 
 04-1349, p. 14 (La.App. 5 Cir. 5/31/05), 904 So.2d 881, 890,
 
 writ
 
 denied, 05-1760 (La.2/10/06), 924 So.2d 163. A defendant is not entitled to a severance as a matter of right, but the decision is one resting within the sound discretion of the tidal court. A denial of a motion to sever will not be overturned absent a clear abuse of discretion.
 
 Id.
 

 A severance is necessary if the defenses of the co-defendants are mutually antagonistic to the extent that one co-defendant attempts to blame the other, causing each defendant to defend against both his co-defendant and the State.
 
 Prudholm,
 
 446 So.2d at 741;
 
 Condley,
 
 04-1349 at 15, 904 So.2d at 890. The defendant bears the burden of proof in a motion to sever.
 
 State v. Jackson,
 
 03-883, p. 16 (La.App. 5 Cir. 4/27/04), 880 So.2d 841, 851-52,
 
 writ denied,
 
 04-1399 (La.11/8/04), 885 So.2d 1118.
 
 [3]
 
 The mere unsupported allegation that defenses will be antagonis
 
 *302
 
 tic is not sufficient to require a severance.
 
 Prudholm,
 
 446 So.2d at 741. Reversal of a conviction for failure to sever where antagonism is shown is not always mandated unless prejudice can be shown.
 
 State v. Cedrington,
 
 98-253, p. 24 (La.App. 5 Cir. 12/16/98), 725 So.2d 565, 577,
 
 writs denied,
 
 99-190 (La.6/4/99), 743 So.2d 1249 and 99-431 (La.6/25/99), 745 So.2d 1182. Antagonistic defenses are not the only instances where the denial of a motion to sever will constitute an abuse of discretion. Where the ends of justice will be best served by severance, it should be granted.
 
 Id.
 

 Defendant admits that his and Hayden’s statements were not antagonistic and there was no evidence to the contrary. Both defendant and Hayden denied any 1,4involvement in the incident and did not blame the other. However, defendant asserts that justice required a severance because he was blamed indirectly by Hayden when her statement and testimony, as well as the testimony of her family, suggested that her alibi did not coincide with his alibi. Defendant’s statement, as presented at trial, was that he was with Hayden the entire day. However, Hayden’s testimony and statement differed by suggesting that at least part of the day, the time that the incident occurred, she was not with defendant but was at her parent’s house without him. Hayden suggested that she left defendant at her friend’s house to get ready for the party and then picked defendant up from her friend’s house to go to the party.
 

 We find defendant failed to demonstrate how he was prejudiced by the denial of the severance. Although Hayden’s statement and testimony, as well as her family’s testimony, revealed potential problems with defendant’s alibi, defendant fails to demonstrate he was prejudiced by any inconsistency. Specifically, regardless of the alibis of Hayden and defendant, defendant was placed at the scene of the incident, at the time of the incident, by three State witnesses: Ms. Gras, Ms. Chiasson, and Vi-net. Thus, we do not find justice required a severance or that the trial court abused its discretion in denying the motion to sever or motion for mistrial based on the severance issue.
 

 ADMISSION OF OTHER CRIMES EVIDENCE
 

 In defendant’s final assignment of error, he asserts his conviction should be set aside because evidence that he was riding around smoking crack and was in the process of meeting with a drug dealer to obtain more crack when the murder occurred was improperly admitted into evidence. Defendant maintains this other crimes evidence did not constitute
 
 res ges-tae
 
 and should not have been admitted.
 

 | ir,The State contends defendant failed to object to the other crimes evidence and, thus, waived the issue for appeal. The State explains that at the hearing on its “Notice of Intent to Use Evidence of Other Crimes/Res Gestae,” it informed defendant that Matthew Vinet would be called to testify that he and defendant smoked crack cocaine prior to the murder. The State contends defendant’s only objection was to the introduction of Vinet’s statement in the event Vinet did not testify, and not to the admission of other crimes evidence. Additionally, the State notes that the trial court failed to rule on this issue and, thus, defendant waived the pending motion by proceeding to trial without objection. The State further notes defendant failed to object at trial to Vinet’s testimony about him and defendant smoking crack cocaine prior to the murder.
 

 The record shows that at the “404(B) Motion” hearing, the State revealed that Vinet would testify and that his statement discussed how he and defendant smoked crack cocaine prior to the murder and that Vinet believed the reason they went to
 
 *303
 
 Laborie’s was to buy more drugs. During the hearing, the State argued that the other crimes evidence was admissible as
 
 res géstate
 
 as well as to demonstrate motive of why the purse was taken. Defendant’s sole concern during the hearing was Vinet’s presence at trial and not the admissibility of the other crimes evidence. The hearing then shifted to the issue of severing the defendants for trial and the trial court did not make any determination regarding the admissibility of the other crimes evidence at this hearing.
 

 During Vinet’s trial testimony, defendant failed to object when Vinet first testified that he and defendant were in his truck smoking crack. Defendant also failed to object when Vinet testified that he and defendant went “around getting high,” that defendant asked him to stop in Marrero to get more crack, and that Vinet believed they went to Laborie’s to “make the deal.” Additionally, nonobjection was made when, in response to cross-examination by Hayden’s counsel, Vinet testified that defendant was the one with the crack, that they went to Laborie’s to meet the “dope man,” and that defendant knew the “dope man.”
 

 We find defendant failed to timely object to the admission of the other crimes evidence and, therefore, waived this issue for appeal.
 
 See
 
 La.C.Cr.P. art. 841;
 
 State v. Yrle,
 
 04-900, p. 8 (La.App. 5 Cir. 3/29/05), 901 So.2d 470, 474,
 
 writ denied,
 
 05-2160 (La.5/5/06), 927 So.2d 306.
 

 ERRORS PATENT
 

 We reviewed the record for errors patent in accordance with La.C.Cr.P. art. 920,
 
 State v. Oliveaux,
 
 312 So.2d 337 (La.1975), and
 
 State v. Hicks,
 
 08-402, p. 13 (La.App. 5 Cir. 12/16/08), 3 So.3d 539, 547, and found no errors that warrant correction.
 

 For the reasons stated above, defendant’s conviction and sentence for second degree murder are affirmed.
 

 AFFIRMED.
 

 [1]
 

 . Co-defendant, Cheri Hayden, filed a separate appeal that bears docket number 09-KA-954.
 

 [2]
 

 . Vinel was charged with accessory after the fact of second degree murder but later pled guilty to obstruction of justice,
 

 [3]
 

 . “When a severance is sought before trial, the standard for obtaining a severance is broader because of the speculation as to what the trial evidence will actually be; and after trial commences, the standard is stricter because at that time the trial judge is able to analyze the evidence which has actually been admitted.”
 
 State v. Foret,
 
 96-281, p. 34 (La. App. 5 Cir. 11/14/96), 685 So.2d 210, 224 n. 9.