JUDE G. GRAVOIS, Judge.
 

 Defendant Mark S. Cambrice appeals his conviction of first degree robbery, a violation of LSA-R.S. 14:64.1. On appeal, he argues two assignments of error. First, defendant contends that the evidence at trial was insufficient to support the verdict of first degree robbery. Second, defendant argues that the trial court erred in denying his motion to suppress his statement. After thorough consideration of the law and the evidence, we affirm defendant’s conviction. Following a review for errors patent, we vacate the multiple offender adjudication and sentence and remand for further proceedings.
 

 PROCEDURAL HISTORY
 

 On December 20, 2007, the Jefferson Parish District Attorney filed a bill of information charging defendant, Mark S. Cambrice, with armed robbery in violation of LSA-R.S. 14:64 and 14:64.3.
 
 [1]
 
 Defendant pled not guilty at arraignment. Hearings on defendant’s Motions to Suppress Statement and | ^Identification were held on July 25, 2008 and February 20, 2009, and the motions were ultimately denied by the court on February 20, 2009.
 

 On May 12, 2009, defendant proceeded to trial before a twelve-person jury. On May 13, 2009, the jury found defendant guilty of the lesser charge of first degree robbery, in violation of LSA-R.S. 14:64.1.
 

 On May 22, 2009, defendant was sentenced to 25 years imprisonment at hard labor without the benefit of probation, parole, or suspension of sentence, with credit for time served. On the same day, the State filed a multiple offender bill of information alleging that defendant was a second felony offender. Following the hearing on the multiple bill on May 29, 2009, the court found defendant to be a second felony offender. The court vacated defendant’s original sentence and imposed an enhanced sentence of 40 years imprisonment at hard labor without the benefit of probation, parole, or suspension of sentence, in accordance with LSA-R.S. 15:529.1. Trial counsel objected to the sentence and filed a Motion to Reconsider Sentence, which was denied by the court. After sentencing, defendant filed a written motion for appeal, which was granted on May 29, 2009.
 

 FACTS
 

 On September 26, 2007, at approximately 3:15 a.m., Deputy Jesse Dormoy of the Jefferson Parish Sheriffs Office responded to a call regarding an armed robbery at a Shell gas station located at 500 Lapalco Boulevard in Gretna, Louisiana.
 
 [2]
 
 After arriving at the scene, Deputy Dormoy interviewed the cashier at the Shell station, reviewed a video surveillance tape, and interviewed the cashier of |4a Chevron gas station across the street, who was also able to provide information regarding the inci
 
 *367
 
 dent at the Shell station.
 
 [3]
 

 Cheri Caire was working as a cashier at the Chevron station located at the intersection of Wall Blvd. and Lapalco Blvd., across the street from the Shell station, during the early morning hours of September 26, 2007. Sometime during the middle of her shift, which began at 10:00 p.m. and ended at 6:00 a.m., Ms. Caire was outside sweeping the parking lot and picking up garbage when a metallic green Mustang pulled into the station. Because the vehicle pulled up so fast, Ms. Caire dropped the broom and dustpan in the parking lot, went inside the store, and locked the door. The driver of the green Mustang approached and asked Ms. Caire to open the door. When Ms. Caire refused and told him to go to the window, the driver of the vehicle persisted, indicating that he wanted something to drink. When Ms. Caire again refused to open the door, the driver asked Ms. Caire if the Shell station across the street was open, and Ms. Caire responded affirmatively. The driver returned to his vehicle, and Ms. Caire observed the green Mustang proceed to the Shell station across the street.
 

 Francis Glapion was working as an overnight cashier at the Shell station located at the intersection of Wall Blvd. and Lapalco Blvd. during the early morning hours of September 26, 2007. At approximately 3:15 a.m., Ms. Glapion was sitting at the register when a man entered the store, greeted her, and walked towards the cooler. When the man returned to the register, he said “[ljook here, this is a robbery.” Ms. Glapion looked up and saw that the man had a black gun in a little black pouch. She testified that both the inside of the Shell station and the drive-up area near the pumps were well lit. Ms. Glapion gave the man the money |.jn her drawer. After the man left, Ms. Glapion called her supervisor and then called the police, who arrived shortly thereafter. Ms. Glapion’s supervisor provided the police with a copy of the Shell station surveillance video.
 

 Approximately one week later, in the early morning hours of October 4, 2007, Deputy Tammy Dore-Howard of the Jefferson Parish Sheriffs Office was on night patrol in Harvey when she conducted a traffic stop on a green Ford Mustang. Defendant was driving the Mustang and there were two other passengers in the vehicle. Deputy Dore-Howard conducted a names check through NCIC (National Crime Information Center), which revealed that defendant and both passengers had several attachments for their arrest. At approximately 3:00 a.m., Deputy Dore-Howard placed defendant and his passengers under arrest and transported them to the Jefferson Parish Correctional Center. Deputy Dore-Howard, noting that the green Mustang matched the description of a vehicle associated with a prior incident of armed robbery on Lapalco Blvd., notified her sergeant and the Robbery Division of the Jefferson Parish Sheriffs Office. Deputy Dore-Howard did not find a gun, a black pouch, or any other evidence related to the armed robbery that occurred the previous week in defendant’s possession or in the vehicle, and the vehicle was left at the scene of the traffic stop.
 

 Sergeant John Carroll of the Jefferson Parish’s Sheriffs Office subsequently received a report from the Second District night shift advising that a black male driving a metallic green Mustang matching the description of the vehicle from the Shell station armed robbery had been arrested. Sergeant Carroll conducted a computer
 
 *368
 
 check on defendant and compared his physical description to the description of the suspect who had robbed the Shell station. The physical description of defendant matched that of the perpetrator of the Shell station robbery. Sergeant Carroll also pulled an AFIS (Automated Fingerprint | ^Identification System) photograph of defendant and compared it to the still photographs compiled from the surveillance video of the Shell station robbery. Sergeant Carroll determined that the photographs “looked like the same person.”
 

 Sergeant Carroll obtained an address for defendant and, upon arrival, observed a metallic green Mustang in the driveway of the residence. Sergeant Carroll interviewed defendant’s niece and sister and determined that the Mustang was registered to defendant’s niece. After receiving verbal consent, Sergeant Carroll conducted a cursory search of the house and the green Mustang. Sergeant Carroll did not find a black gun or a black bag during his search. Defendant’s niece and sister further identified defendant as the person pictured in the still photographs compiled from the surveillance video of the robbery.
 
 [4]
 

 At approximately 3:00 p.m. on October 4, 2007, Sergeant Carroll went to the Jefferson Parish Correctional Center and located defendant, who was incarcerated on the unrelated attachments. Defendant agreed to speak with Sergeant Carroll and accompanied him to the Detective Bureau. Sergeant Carroll read defendant his rights and advised defendant that he was under investigation for armed robbery. Defendant indicated that he understood his rights, and subsequently waived his rights and agreed to make a statement and answer questions. Sergeant Carroll produced the still photographs made from the surveillance video and defendant identified himself as the person depicted in the photographs. Defendant also gave a recorded statement.
 

 The following day, Sergeant Carroll met with the victim, Ms. Glapion, and showed her a photographic lineup that included defendant’s picture. Ms. Glapion positively, and without hesitation, identified defendant as the perpetrator who robbed her. During this interview with Sergeant Carroll, Ms. Glapion again indicated that the perpetrator had a gun, and described the gun as a black revolver.
 

 At trial, Ms. Glapion identified defendant as the person depicted in the surveillance video and the still photographs obtained from the surveillance video. Ms. Glapion also identified the black bag in the still photographs as “the bag with the gun.” Ms. Glapion testified that the person in the surveillance video was the person who robbed her on September 26, 2007. Finally, Ms. Glapion testified that she had picked defendant out of a photographic lineup “[b]ecause that’s the person that I recognized from the robbery.” In court, Ms. Glapion positively identified defendant as the perpetrator of the robbery.
 

 In direct contradiction to the testimony of Ms. Glapion, Sergeant Carroll, and Ms. Caire, and the recorded statement that he gave on October 4, 2007, defendant testi
 
 *369
 
 fied at trial that he stopped at the Shell station on his way to work to put gas in his green Infiniti, and that he had a black bag but did not brandish a gun. Defendant testified that he did not rob Ms. Glapion at the Shell station. Defendant further testified that after he was arrested for outstanding traffic attachments, he gave a statement to Sergeant Carroll at the Detective Bureau. Defendant testified, however, that the statement he gave to Sergeant Carroll was “not accurate at all” and that he “just had to tell him something, so [he] could get it over with.”
 

 Defendant testified that the interview with Sergeant Carroll made him nervous and scared, and that Sergeant Carroll advised defendant that he could be charged with other crimes, including robbery of the Chevron station across the street, but that he could run them concurrently if defendant confessed. On cross-examination, defendant admitted that he was the person depicted in the still photographs from the surveillance video but again indicated that he was at the | «Shell station pumping gas. Defendant also admitted that he had prior convictions for attempted possession of a firearm and possession of cocaine. Finally, defendant testified that he lied to Sergeant Carroll during the October 4, 2007 interview to get out of other charges.
 

 ASSIGNMENT OF ERROR NUMBER
 
 ONE
 
 [5]
 

 Defendant argues that the evidence at trial was insufficient to support the verdict. Defendant notes that there was no weapon recovered and that it was not discernable whether the person in the surveillance video had a gun in his hand. Defendant contends that because the State failed to establish beyond a reasonable doubt that the person who robbed Ms. Glapion had a handgun, it was reversible error for the jury to return a guilty verdict for first degree robbery. As such, defendant argues that a more appropriate verdict would have been simple robbery.
 

 The State responds that LSA-R.S. 14:64.1 requires only that the defendant induce a subjective belief in the victim that he is armed with a dangerous weapon, and that the victim’s belief be objectively reasonable under the circumstances. The State contends the victim’s testimony at trial, including testimony that she believed the defendant was armed, that defendant informed her that he was committing a robbery, and that she complied with defendant’s demands for money, is sufficient to support defendant’s conviction for first degree robbery. Finally, the State notes that the victim positively identified defendant as the person who committed the robbery.
 

 The constitutional standard for testing the sufficiency of the evidence, as enunciated in
 
 Jackson v. Virginia,
 
 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), is whether after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.
 
 See State v. Ortiz,
 
 96-1609, p. 12 (La.10/21/97), 701 So.2d 922, 930,
 
 cert. denied,
 
 524 U.S. 943, 118 S.Ct. 2352, 141 L.Ed.2d 722 (1998);
 
 State v. Bailey,
 
 04-85, p. 4 (La.App. 5 Cir. 5/26/04), 875 So.2d 949, 954-55,
 
 writ denied,
 
 04-1605 (La.11/15/04), 887 So.2d 476,
 
 cert. denied,
 
 546 U.S. 981, 126 S.Ct. 554, 163 L.Ed.2d 468 (2005) (quotation omitted).
 
 *370
 
 This standard, now legislatively embodied in LSA-C.Cr.P. art. 821, does not provide the appellate court with a vehicle to substitute its own appreciation of the evidence for that of the fact finder.
 
 State v. Thomas,
 
 43,783, p. 5 (La.App. 2 Cir. 1/14/09), 2 So.3d 1181, 1184 (citing
 
 State v. Pigford,
 
 05-0477 (La.2/22/06), 922 So.2d 517;
 
 State v. Robertson,
 
 96-1048 (La.10/4/96), 680 So.2d 1165).
 

 When the trier of fact is confronted by conflicting testimony, the determination of that fact rests solely with that judge or jury, who may accept or reject, in whole or in part, the testimony of any witness.
 
 Bailey,
 
 04-85 at 4, 875 So.2d at 955 (citing
 
 State v. Cazenave,
 
 00-183, p. 14 (La.App. 5 Cir. 10/31/00), 772 So.2d 854, 860,
 
 writ denied,
 
 00-3297 (La.10/26/01), 799 So.2d 1151). It is not the function of the appellate court to assess the credibility of witnesses or to re-weigh the evidence absent impingement on the fundamental due process of law.
 
 Bailey,
 
 04-85 at 5, 875 So.2d at 955. In the absence of internal contradiction or irreconcilable conflict with physical evidence, one witness’s testimony, if believed by the trier of fact, is sufficient support for a requisite factual conclusion.
 
 State v. Johnson,
 
 03-903 (La.App. 5 Cir. 12/9/03), 864 So.2d 645, 650 (citing
 
 State v. Stec,
 
 99-633 (La.App. 5 Cir. 11/30/99), 749 So.2d 784, 787).
 

 Ultimately, both the direct and circumstantial evidence must be sufficient to support the conclusion that the defendant is guilty beyond a reasonable doubt.
 
 (State v. Harrell,
 
 01-841, p. 7 (La.App. 5 Cir. 2/26/02), 811 So.2d 1015, 1019. The reviewing court is not required to determine whether another possible hypothesis of innocence suggested by the defendant offers an exculpatory explanation of events. Rather, the reviewing court must determine whether the possible alternative hypothesis is sufficiently reasonable that a rational juror could not have found proof of guilt beyond a reasonable doubt.
 
 State v. Mitchell,
 
 99-3342, p. 7 (La.10/17/00), 772 So.2d 78, 83.
 

 In the present case, defendant was charged with armed robbery and ultimately convicted of the lesser charge of first degree robbery, in violation of LSA-R.S. 14:64.1. To support a conviction for armed robbery, the State must prove beyond a reasonable doubt that there was a taking of anything of value from the person of another or that is in the immediate control of another, by use of force or intimidation, while the offender is armed with a dangerous weapon. LSA-R.S. 14:64(A);
 
 State v. Thomas,
 
 08-813, p. 6 (La.App. 5 Cir. 4/28/09), 13 So.3d 603, 606,
 
 writ denied,
 
 09-1294 (La.4/5/10), 31 So.3d 361;
 
 State v. Brown,
 
 591 So.2d 791 (La.App. 5 Cir.1991).
 

 Alternatively, first degree robbery is the taking of anything of value belonging to another from the person of another, or that is in the immediate control of another, by the use of force or intimidation, when the offender leads the victim to reasonably believe he is armed with a dangerous weapon.
 
 Thomas,
 
 2 So.3d at 1185 (citing LSA-R.S. 14:64.1(A)). To support a conviction for first degree robbery, the State must prove that the offender induced a subjective belief in the victim that he was armed with a dangerous weapon and that the victim’s belief was objectively reasonable under the circumstances.
 
 Id.
 
 (citing
 
 State v. Fortune,
 
 608 So.2d 148 (La.1992);
 
 State v. Collier,
 
 39,882 (La.App. 2 Cir. 8/17/05), 909 So.2d 654,
 
 writ denied,
 
 06-0251 (La.9/15/06), 936 So.2d 1256). The statute excludes 1 [^unreasonable panic reactions by the victim, but otherwise allows the victim’s subjective beliefs to determine whether the offender has committed first degree robbery or the lesser offense of simple robbery.
 
 Id.
 
 (citing
 
 State v. Stills,
 
 34,740 (La.App. 2 Cir. 6/20/01), 792 So.2d
 
 *371
 
 782). Direct testimony by the victim that he or she believed the defendant was armed, or circumstantial inferences arising from the victim’s immediate surrender of his or her personal possessions in response to the defendant’s threats, may support a conviction for first degree robbery.
 
 Id.
 
 (citing
 
 Fortune, supra; State v. Caples,
 
 05-2517 (La.App. 1 Cir. 6/9/06), 938 So.2d 147,
 
 writ denied,
 
 06-2466 (La.4/27/07), 955 So.2d 684).
 

 Encompassed in proving the elements of an offense, both of armed robbery and first degree robbery, is the necessity of proving the identity of the defendant as the perpetrator.
 
 State v. Scott,
 
 06-134 (La.App. 5 Cir. 7/25/06), 939 So.2d 462, 470;
 
 State v. Fuller,
 
 07-319, p. 5 (La.App. 5 Cir. 2/19/08), 980 So.2d 45, 49,
 
 writ denied,
 
 08-0705 (La.10/10/08), 993 So.2d 1282. Positive identification by only one witness is sufficient to support a conviction.
 
 Fuller,
 
 07-319 at 6, 980 So.2d at 49.
 

 In the instant case, the jury was confronted with conflicting testimony offered by Ms. Glapion and defendant. Ms. Gla-pion testified that she was sitting at the register when a man entered the Shell station and walked towards the cooler. When the man returned to the register, he said “[l]ook here, this is a robbery.” Ms. Glapion looked up and observed that the man had a black gun in a little black pouch. Ms. Glapion gave the man the money in her drawer.
 

 At trial, Ms. Glapion testified that she was “sure that [defendant] had a gun,” and that she would not have given defendant the money from the register had she not felt threatened and intimidated. Though Ms. Glapion did not see whether defendant was carrying anything when he entered the store, she testified that “he l^went towards the cooler to get whatever he had, which was his weapon.” Ms. Glapion indicated that when defendant made the demand on her for money, she saw “a little black pouch, and the weapon was in that.” Ms. Glapion described the weapon as a black, metal gun, and testified that she was absolutely positive that it was “a real gun.”
 

 Ms. Glapion also positively, and without hesitation, identified defendant as the perpetrator. Ms. Glapion identified defendant as the person depicted in the surveillance video and the still photographs obtained from the surveillance video. Ms. Glapion testified that the person in the surveillance video was the person who robbed her on September 26, 2007. Finally, Ms. Glapion testified that she had picked defendant out of a photographic lineup “[b]ecause that’s the person that I recognized from the robbery.” As noted above, positive identification by only one witness is sufficient to support a conviction.
 
 Fuller,
 
 07-319 at 6, 980 So.2d at 49.
 

 The jury was also presented with the testimony of the cashier from the Chevron station across the street and the arresting and investigating police officers, Deputy Dore-Howard and Sergeant Carroll, as noted above, which corroborated the testimony offered by Ms. Glapion.
 

 As defendant notes, the gun allegedly used in the robbery was not recovered or produced at trial. However, the production of a weapon, or other physical evidence, is not paramount, even in the case of an armed robbery prosecution, providing the State’s witnesses can otherwise establish, by their observations at the crime scene, all elements of the offense charged beyond a reasonable doubt, including the fact that an alleged armed robber did have and make use of a dangerous weapon.
 
 State v. Calvin,
 
 00-1505 (La. App. 5 Cir. 2/28/01), 781 So.2d 827, 832,
 
 writ denied,
 
 01-1112 (La.1/4/02), 805 So.2d
 
 *372
 
 1182;
 
 State v. Cotton,
 
 94 384, p. 2-8 (La. App. 5 Cir. 11/16/94), 646 So.2d 1144, 1146
 
 [6]
 
 ;
 
 Brown, supra,
 

 [7]
 

 (citing
 
 State v. Brown,
 
 497 So.2d 29 (La.App. 5 Cir.1986)). More importantly, in a conviction for first degree robbery, the State is only required to prove that the offender induced a subjective belief in the victim that he was armed with a dangerous weapon and that the victim’s belief was objectively reasonable under the circumstances. Thus, despite defendant’s contention to the contrary, the State was not required to prove that the person who robbed Ms. Glapion had a handgun in order to support a conviction for first degree robbery.
 

 The jurors clearly found Ms. Glapion’s testimony more credible than the testimony of defendant. As discussed above, the credibility of witnesses presenting conflicting testimony on factual matters is within the sound discretion of the trier of fact, and when faced with a conflict in testimony, the trier of fact is free to accept or reject, in whole or in part, the testimony of any witness.
 
 Jones,
 
 08-20 at 7, 985 So.2d at 240. It is not the function of the appellate court to second-guess the credibility of witnesses as determined by the trier of fact or to reweigh the evidence absent impingement on the fundamental due process of law.
 
 Id.
 

 The jury was presented with all of the evidence, and the jury rejected defendant’s testimony. Ms. Glapion’s testimony shows that she believed the defendant was armed and that her belief was objectively reasonable under the circumstances. Given the above testimony, the evidence was sufficient to also uprove the greater offense of armed robbery,
 
 [8]
 
 and the trier of fact was at liberty to return the responsive verdict of first degree robbery.
 
 Thomas,
 
 2 So.3d at 1185;
 
 see also Brown,
 
 591 So.2d at 798 (holding that a jury may return a legislatively provided responsive verdict, whether or not the evidence supports the verdict, as long as the evidence was sufficient to support a conviction of the charged offense absent a contemporaneous objection).
 

 Based on the foregoing, we find that the evidence, viewed in a light most favorable to the State, was sufficient to establish that defendant was guilty of the charged
 
 *373
 
 offense beyond a reasonable doubt. As such, this assignment of error has no merit.
 

 ASSIGNMENT OF ERROR NUMBER TWO
 

 Defendant argues in his appellate brief that the trial court erred in denying the motion to suppress his statement because he was coerced by the police into giving the statement, and therefore, his statement was not freely or voluntarily made. Specifically, defendant contends that Sergeant Carroll engaged in a pre-recorded conversation with defendant that ultimately forced defendant to make several incriminating comments, including an admission that he robbed the gas station and that he used a toy gun during the robbery. Defendant further asserts that he was placed in a holding cell that was “extremely crowded, noisy and depressing” and that he was “hungry and sleepy” when he was questioned. Defendant also contends that Sergeant Carroll “threatened him and coerced him to confess to robbing the store” and that “he could charge [defendant] with multiple crimes that could result in him not being able to see his sickly mother before she Indies.” Defendant alleges that Sergeant Carroll’s mannerisms were “intimidating and confrontational because the sergeant got in his face several times and told him that he was going away for life.” Thus, defendant alleges that, “out of fear” he agreed to say whatever Sergeant Carroll wanted him to say. As such, defendant argues that his confession should have been suppressed.
 

 The State first responds that defendant failed to preserve this issue for appeal because he failed to move to suppress his statement based upon these abuse claims in his pre-trial motion to suppress or at the suppression hearings, which would have given the State adequate notice and an opportunity to present evidence at the hearing. Thus, because these arguments for suppression were available to defendant at the time of the motion hearing, defendant should be precluded from raising this issue on appeal.
 

 Alternatively, the State contends that defendant’s confession was freely and voluntarily made after a knowing and intelligent waiver. Specifically, the State contends that defendant was informed of his
 
 Miranda
 

 [9]
 

 rights, and that defendant acknowledged that he understood, and ultimately waived, his rights. Finally, the State contends that, because defendant did not present evidence to attack the State’s showing of the free and voluntary nature of the confession during the admissibility hearing, defendant’s trial testimony does not affect the admissibility of the confession, but merely affects the weight the confession will be given by the jury. As such, the State concludes the trial court properly denied defendant’s motion to suppress.
 

 Sergeant Carroll and Francis Glapion testified at the suppression hearings on July 25, 2008 and February 20, 2009.
 
 [10]
 
 Defendant did not testify or present any 11f,witnesses at .the suppression hearings. Sergeant Carroll.testified that he was the case officer on the Shell station robbery, and that, in connection with the investigation, he reviewed the video surveillance
 
 *374
 
 tape from the Shell station and ultimately developed defendant as a suspect. Sergeant Carroll testified that he met with members of defendant’s family on October 4, 2007, and that they identified defendant as the person depicted in the still photographs made from the Shell station video surveillance tape.
 

 On the afternoon of October 4, 2007, Sergeant Carroll met with defendant at the Jefferson Parish Correctional Center and defendant agreed to accompany Sergeant Carroll to the Detective Bureau. Sergeant Carroll testified that he “Miran-dized” defendant via the standard Jefferson Parish Sheriffs Office form, and that defendant was permitted to read along while Sergeant Carroll advised him of his rights. Sergeant Carroll testified that defendant appeared cognizant of what was transpiring and was not drugged or intoxicated. Sergeant Carroll further testified that he did not use any force, coercion or intimidation, or make any promises to defendant in exchange for his statement, and that defendant did not ask to speak with a lawyer or to terminate the interview. Defendant acknowledged that he understood his rights and signed the form agreeing to waive those rights. Sergeant Carroll then interviewed defendant and defendant agreed to give a recorded statement. Sergeant Carroll testified that when he presented the still photographs from the Shell station surveillance video, defendant admitted that he was the person depicted in the photographs. Sergeant Carroll reiterated that he did not use any force, coercion or intimidation in obtaining this confession.
 

 During the recorded statement, defendant first acknowledged that he had been advised of his rights and then made several inculpatory statements. | ^Defendant admitted that he arrived at the Shell station during the early morning hours of September 26, 2007, after he “caught a ride with a guy” driving a green car. Defendant admitted driving through the Chevron parking lot, where he observed a young lady “sweeping around.” Defendant further admitted that when he got to the Shell station, he “went into the store, they had a black lady behind the counter, and I, she didn’t really, I don’t guess she really seen me, I said it was a gun, it wasn’t real.... ” Defendant indicated that he was not carrying “a real gun” and that he told the cashier that he was not going to hurt her. Defendant further admitted that he took approximately sixty-five to seventy dollars from the cashier.
 

 Finally, defendant admitted that he was the person depicted in the still photographs made from the Shell station surveillance video.
 

 At the suppression hearings, both Sergeant Carroll and Ms. Glapion testified that Sergeant Carroll showed Ms. Glapion a photographic lineup in connection with the investigation and that Ms. Glapion positively identified defendant as the perpetrator of the robbery. Both witnesses also testified that Sergeant Carroll did not use any force, coercion or intimidation in order to obtain the identification.
 

 Defendant’s Motion to Suppress sought to suppress the statement on the grounds that it was “inadmissible as being made under the influence of threats, duress, fear and intimidation and promises or reward or other inducements and/or without being advised of constitutional rights.” The trial court denied defendant’s motions to suppress, holding that the statement was not unconstitutionally obtained and were therefore admissible. Defendant objected to the court’s ruling. The State sought to introduce the statement at trial and, when asked if defendant had any objection, defendant responded “[j]ust subject to previous objections in the motions, none.” The
 
 *375
 
 statement was then admitted into evidence and presented to the jury.
 

 j1sA defendant bears the burden of asserting the basis for his motion to suppress in order to give the State adequate notice so that it may present evidence and address the issue.
 
 State v. Jackson,
 
 04-1388, p. 5 (La.App. 5 Cir. 5/31/05), 904 So.2d 907, 911,
 
 writ denied,
 
 05-1740 (La.2/10/06), 924 So.2d 162 (citing LSA-C.Cr.P. art. 703(E);
 
 State v. Smith,
 
 94-120, p. 4 (La.App. 5 Cir. 5/31/94), 638 So.2d 452, 455). After the defendant files a motion to suppress, the State has the burden to prove the defendant’s confession was of a free and voluntary nature.
 
 Jackson,
 
 04-1388 at 5, 904 So.2d at 911 (citing LSA-C.Cr.P. art. 703(D));
 
 see also State v. Favors,
 
 09-1034, p. 9 (La.App. 5 Cir. 6/29/10), 43 So.3d 253, 258 (citing LSA-C.Cr.P. art. 703(D));
 
 State v. Rogers,
 
 09-13 (La.App. 5 Cir. 6/23/09), 19 So.3d 487, 493,
 
 writ denied,
 
 09-1688 (La.4/9/10), 31 So.3d 382. On appeal, the defendant is limited to the grounds he articulated at trial and a new basis for the claim, even if it would be meritorious, cannot be raised for the first time on appeal.
 
 Jackson,
 
 04-1388 at 5, 904 So.2d at 911.
 

 In
 
 Jackson,
 
 though the defendant challenged the voluntariness of his confession, neither his written motion, nor the evidence presented at the motion hearing, alleged that the statement was involuntary because of his young age or because he was sleep deprived at the time of his statement (as asserted on appeal).
 
 Jackson,
 
 04-1388 at 5, 904 So.2d at 911. This Court held that these new bases for suppression of the defendant’s statement, which were raised for the first time on appeal, were not properly before the court.
 
 Id.
 
 In this case, defendant failed to present any evidence or argument at the motion to suppress hearing regarding the specific grounds for suppression that he now argues on appeal, particularly the “abuse” conditions alleged in his appellate brief. Accordingly, these grounds are not properly before this court.
 

 119The trial court’s decision to deny a motion to suppress is afforded great weight and will not be set aside unless the preponderance of the evidence clearly favors suppression.
 
 State v. Burns,
 
 04-175, p. 5 (La.App. 5 Cir. 6/29/04), 877 So.2d 1073, 1075. A trial court is afforded great discretion when ruling on a motion to suppress, and its ruling will not be disturbed absent an abuse of that discretion.
 
 Favors,
 
 09-1034 at 9, 43 So.3d at 259 (citing
 
 State v. Lee,
 
 05-2098 (La.1/16/08), 976 So.2d 109, 122,
 
 cert. denied,
 
 555 U.S. 824, 129 S.Ct. 143, 172 L.Ed.2d 39 (2008);
 
 State v. Rogers, supra); State v. Nicholas,
 
 06-903, p. 6 (La.App. 5 Cir. 4/24/07), 958 So.2d 682, 686. In determining whether the trial court’s ruling on a motion to suppress is correct, an appellate court is not limited to the evidence presented at the motion to suppress hearing but also may consider pertinent evidence presented at trial.
 
 Favors,
 
 09-1034 at 9, 43 So.3d at 259.
 

 Before an inculpatory statement made during a custodial interrogation may be introduced into evidence, the State must prove beyond a reasonable doubt that the defendant was first advised of his
 
 Miranda
 
 rights, that he voluntarily and intelligently waived his
 
 Miranda
 
 rights, and that the statement was made freely and voluntarily and not under the influence of fear, intimidation, menaces, threats, inducement, or promises.
 
 State v. Loeb,
 
 09-341 (La.App. 5 Cir. 2/23/10), 34 So.3d 917, 924-25 (citing LSA-R.S. 15:451);
 
 State v. Blank,
 
 04-0204, pp. 9-10 (La.4/11/07), 955 So.2d 90, 103,
 
 cert. denied,
 
 552 U.S. 994, 128 S.Ct. 494, 169 L.Ed.2d 346 (2007). The critical factor in
 
 *376
 
 a knowing and intelligent waiver is whether the defendant was able to understand the rights explained to him and voluntarily gave the statement.
 
 Loeb,
 
 09-341 at 11-12, 34 So.3d at 925.
 

 Testimony of the interviewing police officer alone may be sufficient proof that a defendant’s statements were freely and voluntarily given.
 
 State v. Mackens,
 
 35,350, p. 13 (La.App. 2 Cir. 12/28/01), 803 So.2d 454, 463,
 
 writ denied,
 
 02-0413 (La.1/24/03), 836 So.2d 37. In the present case, defendant was advised of his
 
 Miranda
 
 rights, including the right to remain silent. Defendant signed waiver of rights forms prior to giving a recorded statement. Defendant indicated that he understood the rights that had been read to him, was willing to answer questions without a lawyer, and waived his right to remain silent. Defendant further indicated that he had not been threatened or induced to waive his rights.
 

 The record shows that defendant made a knowing and intelligent waiver of his right to remain silent. The waiver was voluntary because the detective testified that defendant was not coerced or threatened into making the statement, and because the defendant expressly waived his right to remain silent. Even though defendant argues that the statements should have been suppressed because he was coerced by the police into giving the statement and, as such, his statement was not freely or voluntarily made, the State’s evidence shows that defendant was read his rights and that he indicated that he understood those rights. Because defendant did not invoke his right to remain silent, and because he subsequently made a valid waiver, the trial court did not abuse its discretion in denying defendant’s motion to suppress. This assignment of error is without merit.
 

 ERRORS PATENT DISCUSSION
 

 The record was reviewed for errors patent, according to LSA-C.Cr.P. art. 920;
 
 State v. Oliveaux,
 
 312 So.2d 337 (La. 1975);
 
 State v. Wetland,
 
 556 So.2d 175 (La.App. 5 Cir.1990). Our review reveals one error patent. In this case, at the multiple offender hearing, the trial judge did not advise defendant of his right to a formal hearing at which the state must prove its case or of his constitutional right to remain silent. The trial judge’s failure to sufficiently advise the defendant of his 12i statutory multiple offender rights is an error patent.
 
 State v. Babineaux,
 
 08-705, p. 10 (La.App. 5 Cir. 1/13/09), 8 So.3d 621, 627.
 

 The record discloses that defendant’s habitual offender status was established by stipulation without having been informed of his right to a hearing or his right to remain silent by either the trial court or his attorney.
 

 La. R.S. 15:529.1(D)(1)(a) requires that the defendant be advised of the specific allegations contained in the habitual offender bill of information and his right to a formal hearing at which the state must prove its case. Implicit in this requirement is the additional requirement that the defendant be advised of his constitutional right to remain silent. Generally, the failure of the trial court to advise the defendant of his right to a hearing and his right to remain silent is not considered reversible error where the defendant’s habitual offender status is established by competent evidence offered by the state at a hearing rather than by admission of the defendant. However, when the guilt of the defendant is proven by his own stipulation or admission to the habitual offender bill of information, without having been informed of his right to a hearing or his right to remain silent by either the trial court or his attorney, there is reversible
 
 *377
 
 error.
 
 State v. Bell,
 
 08-217 (La.App. 5 Cir. 5/28/08), 848 So.2d 87, 88 (citations omitted);
 
 State v. Delaney,
 
 42,990, p. 18 (La.App. 2 Cir. 2/13/08), 975 So.2d 789, 799.
 

 At trial, the state introduced evidence of the predicate conviction during defendant’s testimony. Defendant admitted that he had been convicted of attempted possession of a firearm by a convicted felon — the predicate offense. However, there is no colloquy in the record indicating that defendant was advised of his right to remain silent and that he waived that right by testifying. Since there is nothing in the record indicating that defendant was advised of his right to remain silent before admitting that he was convicted of the offense, the trial judge’s failure | g2to advise defendant of his right to remain silent before accepting the stipulation at the habitual offender hearing was not harmless error. As such, the habitual offender finding and enhanced sentence are hereby vacated. The matter is remanded to the trial court for a new habitual offender hearing and further proceedings consistent with this opinion.
 

 CONCLUSION
 

 For the reasons expressed above, defendant’s conviction is affirmed. The trial court’s habitual offender finding and enhanced sentence are vacated, and the matter is remanded for further proceedings consistent with this opinion.
 

 CONVICTION AFFIRMED; MULTIPLE OFFENDER ADJUDICATION AND SENTENCE VACATED; REMANDED WITH INSTRUCTIONS
 

 [1]
 

 . The bill of information was amended on May 12, 2009 to remove any reference to LSA-R.S. 14:64.3.
 

 [2]
 

 . The date of the armed robbery noted in the transcript of Deputy Dormoy's testimony is September 26, 2008. However, the bill of information indicates that the armed robbery of the Shell station occurred on September 26, 2007.
 

 [3]
 

 . The next day, the nightshift officers who responded to the scene reported to Sergeant John Carroll, a shift supervisor in the Armed Robbery Division of the Jefferson Parish Sheriff’s Office, and provided him with a copy of the surveillance video.
 

 [4]
 

 . At the July 25, 2008 suppression hearing, Sergeant Carroll testified that he met with members of defendant’s family and asked them to view the still photographs made from the surveillance video. When Sergeant Carroll asked defendant's sister and niece if they recognized the gentleman in the photographs, they responded affirmatively. Sergeant Carroll testified that defendant’s niece and sister signed and dated the back of the photograph indicating their identification. Finally, Sergeant Carroll testified that he did not use any force, coercion, or intimidation, or make any promises, in order to obtain the identifications.
 

 [5]
 

 . It is noted that on March 26, 2010, defendant filed a Supplemental Brief asserting various
 
 pro se
 
 assignments of error. However, on August 27, 2010, defendant filed a Motion to Withdraw Supplemental Brief, requesting that this Court "reach the merits in counsel filed Brief only.” Defendant’s Motion to Withdraw Supplemental Brief was granted on August 31, 2010.
 

 [6]
 

 . In
 
 Cotton,
 
 the prosecution did not introduce a weapon at trial.
 
 Cotton,
 
 94-384 at 3, 646 So.2d at 1146. The victim, who was the only eyewitness to the crime, testified that the defendant approached him and pressed a hard, sharp object to his side. The victim, thinking the defendant had a knife, complied, and the defendant robbed him. The defendant denied the use of a weapon.
 
 Id.
 
 Finding that the prosecution submitted sufficient evidence to support the armed robbery conviction, this Court held that when a defendant creates an atmosphere of intimidation prompting the victim to reasonably react with fear for his life, an armed robbery conviction is justified.
 
 Id.
 

 [7]
 

 . In
 
 Brown,
 
 the defendant contended that the evidence was insufficient because the gun was not produced at trial.
 
 Brown,
 
 591 So.2d at 793. The victim, an undercover officer working a drug trafficking investigation, testified that the defendant produced a gun and ór-dered the officer to return the rocks of cocaine he had offered to sell to the officer.
 
 Id.
 
 At trial, the defendant denied his involvement in the robbery.
 
 Id.
 
 Reviewing the officer’s testimony in the light most favorable to the prosecution, this Court held that a rational trier of fact could have found beyond a reasonable doubt that the defendant, while armed with a handgun, took drugs from the officer by threatening him with the gun.
 
 Id.
 
 at 794.
 

 [8]
 

 .It is noted that at the sentencing hearing on May 22, 2009, the trial court advised defendant as follows: "Mr. Cambrice, a jury has sentenced you to — or has convicted you Guilty of First Degree Robbery. I think you got a break. I think if I would have been the one making the call, it probably would have been Armed Robbery. But the jury said First Degree Robbery. So I think you did get a break.”
 

 [9]
 

 .
 
 Miranda v. Arizona,
 
 384 U.S. 436, 444, 86 S.Ct. 1602, 1612, 16 L.Ed.2d 694 (1966).
 

 [10]
 

 . Defendant was also charged with simple robbery in Case No. 07-7144. Though defendant alleges in his brief that Officer Corey Newby and Mr. Ronald Gray testified at the suppression hearing, it is noted that Officer Newby and Mr. Gray testified concerning the simple robbery matter (Case No. 07-7144), not the armed robbery matter (Case No. 07-7143) and, as such, their testimony is not relevant to this appeal.