JUDE G. GRAVOIS, Judge.
| ¡¿Defendant Darryl Moody appeals his conviction for one count of armed robbery with a firearm, in violation of La. R.S. 14:64 and 14:64.3. On appeal, he argues that the trial court erred in denying his motion to suppress his statement. For the following reasons, we affirm. We also remand for the correction of errors patent as noted below.

PROCEDURAL HISTORY

On September 13, 2007, the Jefferson Parish District Attorney filed a bill of information charging defendant, Darryl Moody, with one count of armed robbery with a firearm, in violation of La. R.S. 14:64 and 14:64.3. Defendant was subsequently arraigned and pled not guilty.
Defendant filed a Motion to Suppress Confession, Identification and Physical Evidence, which was denied by the trial court. On January 13, 2010, [,-¡defendant proceeded to trial.[1] After a three-day trial, a twelve-person jury found defendant guilty as charged. On January 27, 2010, the trial court sentenced defendant to 15 years in the Department of Corrections without the benefit of parole, probation or suspension of sentence. The trial court then ordered defendant’s sentence to be enhanced by an additional five years im *1109 prisonment under the firearm enhancement provision of La. R.S. 14:64.3.[2] On that same date, defendant filed a motion to reconsider sentence, which the trial court denied. This timely appeal followed.

FACTS

The victim, Mylinda Gettys, testified that on July 24, 2007, she went to Clear-view Mall in Metairie to make a credit card payment at Sears. After exiting Sears, she got into her Honda Accord and put her purse on the passenger seat. As she leaned over to close her car door, a van pulled up into the vacant handicapped parking spot next to her car. Before Ms. Gettys was able to close her car door, the individual seated on the passenger’s side of the van quickly exited the van and approached her with a gun. He stood in the opening of her car door, leaned over, and put the gun against her body. He demanded that she give him her money and her car key. She handed him her purse and her car key. He then demanded that she get out of the car. She complied. She testified that they were face-to-face for “probably 10, 15 seconds.” She stated that she was staring at him, waiting for him to tell her what to do. She was afraid he was going to shoot her. The driver then got out of the van. At that point, she decided to run to the back of her car and duck |4down. As she was ducked down, she tried to move a couple of car lengths away. She then called 911 from her cell phone.
Sergeant John Carroll, a detective with the robbery division of the Jefferson Parish Sheriffs Office, was assigned to investigate the robbery. When he arrived at the scene, he spoke with Ms. Gettys, who gave him a description of the perpetrator, which he documented in his supplemental report.
A week later, on July 31, 2007, Sergeant Andre LeBlanc, a New Orleans police officer, responded to a 911 dispatch regarding suspicious activity in the Wal-Mart parking lot in Algiers.[3] Upon his arrival, Sergeant LeBlanc detained defendant and another individual, Terrance Brown, who met the description of the individuals in the suspicious persons complaint. Sergeant LeBlanc then reviewed the Wal-Mart surveillance video, which showed the two individuals arriving in a grayish or silver colored Honda Accord. He ran the license plate number of the Honda Accord and learned that it had been carjacked. He then searched defendant and Mr. Brown and discovered the key to the Honda in Mr. Brown’s possession. Defendant and Mr. Brown were arrested for possession of a stolen vehicle and placed in the rear of the police unit. Sergeant LeBlanc then contacted Jefferson Parish detectives via dispatch, and Sergeant Carroll and Detective David Mascaro of the Jefferson Parish Sheriffs Department subsequently arrived.
Upon his arrival at Wal-Mart, Sergeant Carroll saw defendant and Mr. Brown detained in the back of a New Orleans police car. He also saw Ms. Gettys’ Honda Accord in the back of the parking lot. He contacted the Jefferson Parish crime scene unit to process the vehicle.[4] Defendant *1110 and Mr. Brown were ^transported to the Fourth District station of the New Orleans Police Department and charged with possession of a stolen vehicle. Sergeant Carroll and Detective Mascaro then interviewed the suspects at the Fourth District station. That afternoon, defendant gave a statement in which he confessed to robbing Ms. Gettys at the Clearview Mall in Metairie.[5]
That same day, Ms. Gettys went to the New Orleans Police Station to see her car. Sergeant Carroll testified that Ms. Gettys did not see defendant or Mr. Brown at the police station, and Sergeant Carroll did not inform her that anyone had been arrested in connection with the crime. Ms. Gettys similarly testified that she was unaware that anyone had been apprehended in connection with the robbery when she went to the Fourth District station to see her car. When Sergeant Carroll returned to Jefferson Parish, he prepared arrest warrants for defendant and Mr. Brown for the armed robbery of Ms. Gettys.
The next day, Sergeant Carroll showed Ms. Gettys a six-picture photographic lineup, which included a photograph of defendant. Ms. Gettys identified defendant as the perpetrator and signed the back of the photographic line-up. On that same day, Ms. Gettys gave a taped statement documenting her positive identification.[6]
At trial, Ms. Gettys identified defendant as the perpetrator. The prosecutor asked, “Ms. Gettys, are you absolutely positive that [defendant] sitting right here (indicating) is the person who robbed you?” Ms. Gettys responded, ‘Tes.” She further testified that at the time of the crime, it was daylight outside and the perpetrator did not have a mask on his face or anything covering his head.
[f,Ms. Charles Colleen Barjon, a counsel- or coordinator for the Recovery School District, testified for the defense. She stated that she was the custodian of records for the district, and that she was responsible for maintaining student records in 2007, including defendant’s 2007 summer school records from Douglas High. She testified that the records reflected that defendant was enrolled in the morning and afternoon summer school sessions in July 2007. The records further indicated that defendant was present for both the morning and afternoon sessions of class on July 24, 2007, the date of the robbery. She acknowledged, however, that the attendance/grade sheet for the week of July 23, the week of the robbery, appeared to be identical to the week of July 2 and the week of July 9, in that every student, including defendant, had identical grades and attendance.[7]
The records further reflected that defendant was present for the morning and afternoon sessions on July 31, 2007. However, Ms. Barjon acknowledged that the attendance/grade sheet for the week of July 30 appeared to be identical to the week of July 23, as every student received the same grades and attendance for both weeks. Additionally, defendant could not have been present in class on the afternoon of July 31, 2007 because he was in police custody at that time.
*1111 Mr. Albert Robinson, defendant’s summer school teacher, testified that his records were reliable, even though defendant was marked present and given a grade on the day he was in police custody.
At trial, defendant denied robbing Ms. Gettys on July 24, 2007. He denied being at the Clearview Mall on the afternoon of the robbery, pointing a gun at Ms. Gettys, and taking her purse. He testified that on July 24, 2007, the date of the armed robbery, he had attended both sessions of summer school.
|70n July 31, 2007, the date he was arrested, defendant stated that he completed his exams for session one and two in the morning session and then left school. He testified that Mr. Brown drove the Honda Accord, which ran out of gas when they arrived at Wal-Mart. He stated that they were headed to Mr. Brown’s mother’s job on Behrman Highway to get some money when they were arrested. He testified that he had no knowledge that the Honda had been stolen when he was with Mr. Brown on July 31.
ASSIGNMENT OF ERROR — Denial of motion to suppress statement
In his only assignment of error, defendant argues that the trial court erred in denying his motion to suppress his statement. He contends that he was physically threatened by Detective Mascaro. Specifically, he contends in brief that Detective Mascaro grabbed him “by the back of the neck and slapped him around the hairline where no bruising would appear.” He argues in brief that he was small and easily physically intimidated by the detectives, and that the detectives “interrogated him until they got [him] to say exactly what they wanted.” Defendant contends that the State failed to “prove to beyond a reasonable doubt” that defendant’s statements were voluntary.[8]
The State argues in brief that there is no evidence that defendant’s statements were coerced or unconstitutionally obtained “other than [defendant’s] self-serving trial testimony.” The State further contends that defendant failed to argue that his statement was the product of abuse or coercion in his motion to suppress; thus, he is precluded from raising this issue on appeal. Additionally, the IsState argues that defendant’s “trial testimony regarding coercion does not affect the admissibility of his statement, but rather, his testimonial evidence merely affects the weight of the evidence which was presented to the jury,” citing State v. Tucker, 332 So.2d 797 (La.1976).
A defendant bears the burden of asserting the basis for his motion to suppress in order to give the State adequate notice so that it may present evidence and address the issue. State v. Cambrice, 10-26, p. 18 (La.App. 5 Cir. 4/26/11), 64 So.3d 363, 375 (citing State v. Jackson, 04-1388, p. 5 (La.App. 5 Cir. 5/31/05), 904 So.2d 907, 911, writ denied, 05-1740 (La.2/10/06), 924 So.2d 162 (citing La.C.Cr.P. art. 703(E); State v. Smith, 94-120, p. 4 (La.App. 5 Cir. 5/31/94), 638 So.2d 452, 455)). After defendant files a motion to suppress, the State has the burden to prove defendant’s confession was of a free and voluntary nature. Cambrice, supra (citing Jackson, supra (citing La.C.Cr.P. art. 703(D))); see also State v. Favors, 09-1034, p. 9 (La.App. 5 Cir. 6/29/10), 43 So.3d 253, 258, writ de *1112 nied, 10-1761 (La.2/4/11), 57 So.3d 309 (citing La.C.Cr.P. art. 703(D)).
On appeal, the defendant is limited to the grounds he articulated at trial and may not raise a new basis for the claim on appeal, even if it would be meritorious. Cambrice, supra (citing Jackson, supra), see also State v. Merritt, 04-204, p. 6 (La.App. 5 Cir. 6/29/04), 877 So.2d 1079, 1082, writ denied, 04-1849 (La.11/24/04), 888 So.2d 228.
In the present case, defendant filed a Motion to Suppress Confession, Identification and Physical Evidence on September 17, 2007. The motion sought to suppress defendant’s statement on the grounds that the statement was not given freely and voluntarily, but was “made under the influence of fear, intimidation, threats or other duress, ...; and/or [defendant had not been advised of his rights |9under Miranda,[9] or had invoked his right to remain silent or to have an attorney and this right had not been honored.”
During the suppression hearing, defense counsel only asked a few questions regarding defendant’s statement. He asked Sergeant Carroll why he had not obtained a witness’s signature on defendant’s Waiver of Rights form. Sergeant Carroll responded that Detective Mascaro was not present when defendant signed the form. Defense counsel then asked, ‘You couldn’t wait until a witness was present to sign that form along with Mr. Moody?” Sergeant Carroll responded, “No. I didn’t have to.” Defense counsel asked questions concerning Ms. Gettys’ identification of defendant. Defense counsel did not present any witnesses or offer any evidence, and defendant did not testify. Defense counsel stated that he had a brief argument, at which time he asked for the identification of defendant to be suppressed “because the State failed to get Ms. Gettys to identify [defendant] in open court.” However, defense counsel never argued that defendant’s statement was the result of abuse or coercion nor did he verbally request that defendant’s statement be suppressed. The trial court denied defendant’s motion to suppress, finding that there were no violations and that defendant understood his rights. Defense counsel objected to the trial court’s ruling.
In Cambrice, supra, defendant argued that the trial court erred in denying his motion to suppress his statement, claiming that he was coerced by the police into giving the statement, and therefore, his statement was not given freely or voluntarily. He contended that he was placed in a holding cell that was “extremely crowded, noisy and depressing” and that he was “hungry and sleepy” when he was questioned. Defendant also argued that the sergeant “threatened him and coerced him to confess to robbing the store” and told him that “he could charge [defendant] |inwith multiple crimes that could result in him not being able to see his sickly mother before she dies.” Thus, defendant alleged that he agreed to say whatever the sergeant wanted him to say “out of fear.” Id., 10-26, p. 14-15, 64 So.3d at 373. This Court held that defendant failed to present any evidence or argument at the motion to suppress hearing regarding the specific grounds for suppression that he argued on appeal, particularly the “abuse” conditions alleged in his appellate brief. Accordingly, this Court held that these grounds were not properly before the court on appeal, and declined to consider them. Id., 10-26 at 18, 64 So.3d at 375.
In the present case, given defendant’s failure to present any evidence or argument at the motion to suppress hearing regarding the specific grounds for suppression that he now argues on appeal, *1113 particularly the abusive conditions that he now alleges in his appellate brief, we find that these grounds are not properly before this Court. Nevertheless, a review of defendant’s claim shows that it has no merit.
A trial court is afforded great discretion when ruling on a motion to suppress, and its ruling will not be disturbed absent an abuse of that discretion. Favors, 09-1034 at 9, 43 So.3d at 259 (citing State v. Lee, 05-2098 (La.1/16/08), 976 So.2d 109, 122, cert. denied, 555 U.S. 824, 129 S.Ct. 143, 172 L.Ed.2d 39 (2008); State v. Nicholas, 06-903, p. 6 (La.App. 5 Cir. 4/24/07), 958 So.2d 682, 686). An appellate court is not limited to the evidence presented at the motion to suppress hearing but also may consider pertinent evidence presented at trial. Favors, 09-1034 at 9, 43 So.3d at 259 (citing State v. Mollette, 08-138 (La.App. 5 Cir. 11/25/08), 2 So.3d 461, 467, writ denied, 09-155 (La.10/16/09), 19 So.3d 472).
InBefore an inculpatory statement made during a custodial interrogation [10] may be introduced into evidence, the State must prove beyond a reasonable doubt that the defendant was first advised of his Miranda rights, that he voluntarily and intelligently waived his Miranda rights, and that the statement was made freely and voluntarily and not under the influence of fear, intimidation, menaces, threats, inducement, or promises. Loeb, 09-341 at 11, 34 So.3d at 924-25 (citing LSA-R.S. 15:451). Whether a defendant’s purported waiver of Miranda rights was voluntary is determined by the totality of the circumstances. Loeb, 09-341 at 11, 34 So.3d at 925. The critical factor in a knowing and intelligent waiver is whether the defendant was able to understand the rights explained to him and voluntarily gave the statement. Id. at 925. Testimony of the interviewing police officer alone may be sufficient proof that a defendant’s statements were freely and voluntarily given. State v. Mackens, 35,350, p. 13 (La.App. 2 Cir. 12/28/01), 803 So.2d 454, 463, writ denied, 02-0413 (La.1/24/03), 836 So.2d 37.
In the present case, Sergeant LeBlane, Sergeant Carroll and Ms. Gettys testified for the State at the suppression hearing. Sergeant Carroll testified regarding the circumstances surrounding defendant’s statement. He stated that on July 31, 2007, he executed a Rights of Arrestee form in the name of defendant, Darryl Moody, while at the NOPD Fourth District Police Station in Algiers. He stated that he advised defendant of his Miranda rights and defendant affixed his initials next to each and every one of those rights and then signed the form, indicating that he had been read his rights and he understood the rights that were read to him. Additionally, Sergeant Carroll testified that defendant signed the Waiver of Rights form indicating that he wished to waive his rights and provide a 112statement without consulting an attorney. Sergeant Carroll denied forcing, threatening or coercing defendant into providing a statement. He also denied promising him anything in exchange for his statement. Sergeant Carroll further stated that he had audiotaped defendant’s statement, which was subsequently transcribed. He stated that the transcript was a clear and accurate depiction of what is contained on the tape. He further testified that Detective David Mascaro was present when he took defendant’s statement.
*1114 In defendant’s audiotaped statement, he acknowledged that he signed and initialed the Rights of Arrestee form, which indicated that the officers had read him his rights and that he understood those rights. He further conceded that he signed the Waiver of Rights form, indicating that he was willing to make a statement and answer questions. In his statement, he admitted that he approached the victim in her Honda at Clearview Mall and said, “Give me your purse.” He stated that he had a BB gun in his hand. However, he denied that she gave him her car keys.
At trial, the State introduced the transcription of defendant’s audiotaped statement and the micro-cassette tape used to record defendant’s statement. Defense counsel objected to the introduction of the tape itself because “the detective did not state how he was able to recognize [the] micro-cassette tape.” The trial court noted the objection, but admitted the tape into evidence. The State then played defendant’s statement for the jury.
At trial, Sergeant Carroll testified that when he arrived at the Fourth District station, the two suspects had been placed in separate areas. Sergeant Carroll stated that he read defendant his rights from a Jefferson Parish Sheriffs Office Rights of Arrestee form, and then defendant signed the form. When the prosecutor asked if defendant seemed capable of understanding those rights, Sergeant Carroll stated, “Yes.” When asked if he forced defendant to sign the form, he stated, “No.” The | ^prosecutor further asked, “Did anyone hit [defendant] ... yourself or Detective Mascaro? ... Did anyone pull — pull a weapon on him? ... Did anyone touch him in any way to get him to sign this form?” Sergeant Carroll responded, “No.” Defendant gave a taped statement forty-eight minutes after signing the form.
Sergeant Carroll testified that after defendant signed the form, he conducted a pre-interview, during which time he tried to obtain a confession from defendant. Sergeant Carroll stated that it was not too difficult to obtain defendant’s confession because he had information from a co-defendant, and he also knew that defendant had been caught in the victim’s car at Wal-Mart. Sergeant Carroll stated that defendant was cooperative.
The interview was taken in a trailer. Sergeant Carroll testified that “when you walk in [sic] it’s wide open,” but they conducted the interview on the left side of the trailer. He stated, “They had people going in [sic] out the other side of the trailer because we can’t stop NOPD operation[s] just because we’re there working a case, but they were doing their thing on the opposite side of the trailer.” The prosecutor asked, “Were you able to see other people?” Sergeant Carroll responded, “Yes.” The prosecutor asked, “[I]n this case did you do anything to threaten [defendant] into giving that statement? Did you threaten any of his family members?” He responded, “No.”
At trial, Detective Mascaro testified that he was not present when defendant was initially read his rights, but he was present for defendant’s taped statement and for portions of the pre-interview. He testified that defendant was cooperative and agreed to go on tape. The prosecutor asked Detective Mascaro, “[W]hen you spoke to [defendant] and Sergeant Carroll spoke with [defendant], did either one of you tell him what to say on that tape?” Detective Mas-caro responded, “No.”
|MAt trial, defendant testified that, upon arriving at the police station, he was brought to a trailer, which consisted of an open room. He admitted that he signed a Rights of Arrestee form, although he testified that he was pressured and coerced into signing the form. He stated, “Masca-ro put his hand around my neck ... [f]rom *1115 behind.” He further testified that they slapped him on the side and back of his head. He stated that he was alone with the detectives in the trailer. He acknowledged giving a statement, but testified that he had been pressured into giving the statement and that it was not correct. He testified that they told him to say that he robbed Ms. Gettys. When asked what happened during the pre-interview, defendant stated that “they told me to find directions on the paper ... the paper they had got from [Mr. Brown].”
The State then recalled Sergeant Carroll. Sergeant Carroll denied that he directed defendant how to respond during his taped statement. The prosecutor then asked, “Did you during the taped statement ever lay a hand or did you ever see Detective Dave Mascaro lay a hand on the defendant?” Sergeant Carroll responded, “No.” The State then recalled Detective Mascaro, who denied grabbing defendant by the neck and slapping him on the neck.
In the present case, defendant was advised of his Miranda rights. He initialed next to each of his rights and signed the bottom of the Rights of Arrestee form, indicating that he had read the statement of his rights. Furthermore, he signed under the waiver of rights section prior to giving his audio recorded statement. By signing, he indicated that he was willing to make a statement and answer questions. His signature further indicated that he did not want a lawyer, and that no promises or threats had been made to him, and he had not been pressured or coerced.
[ ifiThe State showed that defendant made a knowing and intelligent waiver of his right to remain silent. Even though defendant argues that the statement should have been suppressed because he was coerced by the police into giving the statement, and as such, his statement was not freely or voluntarily made, the State’s evidence shows that defendant was read his rights and that he indicated that he understood those rights. Because defendant did not invoke his right to remain silent, and because he subsequently made a valid waiver, the trial court did not abuse its discretion in denying defendant’s motion to suppress. This assignment of error is without merit.

ERRORS PATENT DISCUSSION

The record was reviewed for errors patent, according to La.C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La.1975); and State v. Weiland, 556 So.2d 175 (La.App. 5 Cir.1990).
The transcript reflects that defendant was found guilty by a jury. However, the commitment states that defendant was “found guilty by a judge.” Where there is a conflict between the transcript and the minute entry, the transcript prevails. State v. Lynch, 441 So.2d 732, 734 (La.1983). Therefore, it is ordered that the commitment be amended to conform to the transcript. See State v. Jefferson, 03-820, p. 10 (La.App. 5 Cir. 1/27/04), 866 So.2d 931, 943-44, writ denied, 04-727 (La.9/24/04), 882 So.2d 1166. Further, it is ordered that the clerk of court of the district court transmit the original of the amended commitment to the officer in charge of the institution in which defendant is incarcerated, and to the Legal Department of the Louisiana Department of Corrections. See La.C.Cr.P. art. 892 B(2); State ex rel. Stark v. State, 06-1457 (La.2/16/07), 949 So.2d 409, 410.
| if,The record further indicates that the trial judge failed to notify defendant of the two-year prescriptive period for filing an application for post-conviction relief, as required by La.C.Cr.P. art. 930.8. Although the commitment/minute entry indicates that defendant was advised of the prescriptive period for filing for post-conviction relief, the sentencing transcript indicates that he was not so advised. When there is *1116 a discrepancy between the transcript and the commitment/minute entry, the transcript governs. Lynch, supra. Accordingly, defendant is advised by way of this opinion that no application for post-conviction relief, including an application which seeks an out-of-time appeal, shall be considered if it is filed more than two years after the judgment of conviction and sentence has become final under the provisions of La.C.Cr.P. arts. 914 and 922, as per La.C.Cr.P. art. 930.8.
The commitment reflects that the trial court sentenced defendant to an additional five years under the firearm penalty enhancement and that the five years was “to run consecutive with the 15-year sentence.” However, the transcript does not reflect that the trial court explicitly stated that the sentences were to run consecutively. However, La. R.S. 14:64.3(A) provides that the additional penalty imposed pursuant to this Subsection shall be served consecutively to the sentence imposed under the provisions of R.S. lí:6L (Emphasis added.) The word “shall” makes these statutory requirements mandatory. La. R.S. 1:3; La.C.Cr.P. art. 5. In this case, because sentencing on the enhancement is not a matter of judicial discretion but is mandated by statute, no corrective action is required.
11 ^CONCLUSION
For the foregoing reasons, defendant’s conviction is affirmed. This matter is remanded to the trial court for amendment of the commitment as instructed above.

AFFIRMED; REMANDED WITH INSTRUCTIONS

. This was defendant’s second trial. Defendant’s first trial, which started on June 23, 2009, resulted in a mistrial.

. Defendant was resentenced on February 24, 2010. Defendant received the same sentence as he did on January 27, 2010. The purpose of resentencing may have been to clarify defendant’s sentence with regard to the firearm enhancement provision. The reason for re-sentencing is unclear from the record.

. James Willie, the head of security at the Wal-Mart in Algiers, called 911 on July 31, 2007, regarding the suspicious activity.

.Aischa Prudhomme, a latent print examiner for the Jefferson Parish Sheriff's Office Crime Lab, testified that defendant’s right index finger and right middle finger were identified on the exterior of the right front door of the Honda Accord.

. See assignment of error for discussion of defendant’s interview.

. Ms. Gettys testified that Sergeant Carroll did not in any way suggest to her which person to pick out from the photo line-up. She stated that he did not tell her that the person who robbed her was in the photo lineup, and he did not force her to pick out someone or promise her something in exchange for picking someone out.

.The attendance/grade sheet for the week of July 23, the week of the robbery, appears to be a photocopy of either the week of July 2 or July 9 with the dates changed at the top of the page.

. Defendant further states that at the suppression hearing, the detectives gave the "usual, self-serving litany that no promises were made; the statement was not forced; there was no physical touching or threats; and [defendant] willingly gave an incriminating statement.” Defendant contends that Sergeant Carroll's credibility has been called into question by recent events in which he was arrested for conspiracy to distribute cocaine, domestic abuse and simple criminal damage to property and fired from the police force.

. Miranda v. Arizona, 384 U.S. 436, 444, 86 S.Ct. 1602, 1612, 16 L.Ed.2d 694 (1966).

. The United States Supreme Court defined “custodial interrogation" as the “questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way.” Miranda v. Arizona, 384 U.S. at 444, 86 S.Ct. at 1612.